1824.

Jarrett
vs
Cooley

The note being endorsed, after it was due, makes it in one respect different from other notes, that is, that the holder could not look to the endorsors without proof of the insolvency of the drawer. If the endorsor is considered as drawer, he has not been sued as drawer. As between the endorsor and endorsee, it stands in the same situation as all other notes. *Chitty*, 141. If as drawer, he is entitled to notice; *Mutford vs. Walcot*, 1 *Ld. Raym*. 575. *Chalmers vs. Laniow*, 1 *Campb*. 383. This was the assignment of a note in payment of a debt. The same care and attention is therefore required; to make the assignor liable, as in all cases of promissory notes endorsed. If the note was accepted as conditional payment, still the same strictness is necessary to bind the assignor. *Chitty*, 157. To show that the same degree of diligence is necessary where a note is not regularly endorsed, or is not regularly a bill of exchange, he referred to *Chamberlyn vs. Delarive*, 2 *Wils*. 353. *Moore vs. Warren*, 1 *Stra*. 415. *Turner vs. Mead*, *Ibid* 416. *Ward vs. Evans*, 2 *Ld. Raym*. 928. *Tobey vs. Barber*, 5 *Johns. Rep*. 68, 72. *Chitty*, 118; *(note K.) Clark vs. Young*, 1 *Cranch*, 192.

*Curia adv. vult.*

At this term

JUDGMENT AFFIRMED.

---

June.

Under the act of 1786, *ch*, 45, to direct descents, and its supplements, a purchaser of the interest of the eldest son, &c, of an intestate; has a right to elect to take the intestates real estate at the valuation of it by the commissioners

A legal estate in severalty does not vest in a party electing to take under the said act of descents, unless he pays the other heirs their proportions of the valuation or executes bonds to pay the same.

**JARRETT's Lessee vs. COOLEY, et al.**

APPEAL from *Harford* county court. The cause, which is fully stated in the opinion delivered by this court, was argued before BUCHANAN, Ch. J. EARLE, MARTIN; and STEPHEN, J. by

*Magruder* and *R. Johnson*, for the Appellant, and by *Mitchell*, for the Appellees.

The opinion of the court was delivered by

EARLE, J. This is an ejectment instituted in *Harford* county court, for the recovery of an undivided sixth part of a tract of land called *Rupulta*.

The plaintiff gave testimony to support his right to recover, and rested his cause upon his proofs. To defeat his

title the defendants, *Charles* & *Carvil Cooley*, contended, that the whole tract called *Rupulta* had become the several estate of one *William Mitchell*, in virtue of a proceeding in *Harford* county court, under the descent laws. In support of the defence, they offered in evidence a record of *Harford* county court, showing that one *James Mitchell* died seized and intestate of *Rupulta*, and other lands, in 1798, leaving six children, *Martin, Bennett, Kent, Harriet, James,* and *Aquila Mitchell*, the two last of whom were minors under twenty-one years of age; that a petition was filed in 1809, for the partition of the intestate's lands between his heirs and the said *William Mitchell*, who is stated to have been a purchaser under *Martin Mitchell*, the eldest son; that it was so far proceeded on, that at March term 1810, the commissioners returned, that the land of the deceased would not bear division without loss to all the parties concerned, and they valued the tract called *Rupulta* to the sum of $7830. And showing further, that the return was confirmed by *Harford* county court at the August term following, when *William Mitchell* being a purchaser under *Martin Mitchell*, the eldest son, elected to take the whole estate of the intestate, including the tract called *Rupulta*, at the valuation of the commissioners. And the defendants then moved the court to direct the jury, that the record and proceedings exhibited, and the matters therein contained, divested the title of the children and heirs of *James Mitchell* in the tract called *Rupulta*, and vested the title thereof in *William Mitchell* therein named. Which direction the court gave to the jury, and the plaintiff excepted. This opinion of *Harford* county court we have now to examine. On the argument it was urged by the plaintiff's counsel, that the direction ought not to have been given, because the election by *William Mitchell* was defective in not stating that he engaged to pay to the children of *James Mitchell* their just proportions of the value in money; and because it does not appear in the record read in evidence, that he in fact paid them their proportions of the value, or gave bonds to them for the same, with two or more sufficient securities approved by the court.

The manner of making the election, and vesting the legal estate in the party electing, are provided for by the acts of 1786, *ch.* 45, and 1802, *ch.* 94.

By the first act, after the return and judgment of the commissioners are confirmed by the court, the eldest son, child, or person entitled, shall have election to take the whole estate, and to pay to the others their just proportions of the value in money; and by the last act shall give bond, with two or more sufficient securities, to be approved by the court, to the other person or persons entitled to the estate, for their several proportions of the sum of money at which the estate is valued.

The act of 1786, we think, was substantially complied with by *William Mitchell*, the purchaser under *Martin Mitchell*, the eldest son. He elected to take the whole estate of the intestate at the valuation set on it by the commissioners, and thereby necessarily elected or engaged to pay the other heirs their just proportions of the value in money. By the law, no proceedings of the commissioners shall be set aside for matter of form, and it could not have been intended by the legislature, that much technicality should be observed by the party, in his compliances with the requisitions of the act. The design of the election is to vest the legal estate in the party electing, and to oblige him to pay to the other heirs their just proportions of the value in money; and when those objects are attained, it matters not by what form of words they are effected. It does not appear that *William Mitchell*, the purchaser under *Martin Mitchell*, paid the other heirs of the intestate their proportions of the value in money, or passed to them bonds for the same, and for this reason the court are of opinion, that the legal estate in fee, in the tract called *Rupulta*, has not vested in him in severalty. The payment of the purchase money, or the giving of bonds for the same, we consider indispensable requisites to be complied with, to vest the legal estate in the party electing. As to the bonds, the expressions of the act of 1802, *ch*. 94, are explicit; and for the greater security of the other heirs, they are thereby made liens upon the land elected to be taken; and giving them, where the money is not paid down, we must view as a pre-requisite to settling the legal estate in the person electing. The case of *Stevens vs. Richardson*, *(ante* 156,) did not directly decide this question, and we therefore represented it to be a point still open for discussion.

In that instance bonds were passed by the husband, who

elected to take in right of his wife, and the court adjudged, that the legal estate in fee vested in him, without paying the purchase money, secured by the bonds, to the heirs, on obtaining a deed from the commissioners. But it was not argued before the court, nor was it expressly decided by them, that the giving of bonds was an indispensable requisite to vest the legal estate in fee in the person electing. This question we now, however, propose to put at rest, by declaring it to be our unanimous opinion, that a legal estate in fee in the land elected to be taken, cannot vest in the party electing to take and pay the value, without his actually paying the other persons entitled their just proportions of the value in money, or giving bonds to them for the same, agreeably to the act of 1802, *ch.* 94.

We reverse the judgment of *Harford* county court, and direct a *procedendo* to issue.

JUDGMENT REVERSED, &c.