Bland, Chancellor.-
This case standing ready for hearing, and the solicitors of the parties having been fully heard, the proceedings were read and considered.
The plaintiff founds his right to sue this defendant alone and in this court upon the circumstance of his claim being altogether or in some essential particulars, of an equitable character only; and upon the fact, that the property held by this defendant has been bound for the satisfaction of his claim, and may be followed and taken by him alone without regard to any other similar and contemporaneous claims upon it; and also without regard to the manner, or to any one from whom this holder of it may have derived title after it had become so bound. And all this the plaintiff seems to conceive, necessarily arises from his being, as he alleges, the holder of an equitable lien upon the land.
The term lien is applied in various modes; but, in all cases, it signifies an obligation, tie, or claim annexed to, or attaching upon property without satisfying which such property cannot be demanded by its owner. (b) Lien, in its proper sense, is a right which the law gives. But it is usual to speak of lien by contract, though that be more in the nature of an agreement for a pledge. And there are liens which exist only in equity, and of which equity alone can take cognizance, (c) The existence of a lien, however, and the benefit which may be derived from it, as well as the mode in which that benefit may be obtained, depend upon principles of law and circumstances so various, that it is always indispensably necessary carefully to attend to those particulars by which its very substance may be materially affected. For all the purposes of the present enquiry, however, liens may be regarded as of two kinds; such as are sustained by the principles of common law or of equity upon the peculiar circumstances of the case; or such as arise out of positive legislative enactment; but all liens are essentially different from that priority of satisfaction, the right to which is given by act of Congress to the United States. (d)
A lien given by the common law for the benefit of trade, and the like, such as that by which a factor may hold the goods of his principal, or that by which an innkeeper may detain the goods of his guest, &c., until he is paid, is always associated with posses *543 sion. It'begins and ends with possession; for it is only upon property in the possession, and while it actually continues in the possession of such a creditor, that any such lien attaches, (e) If the possession be lost, or be suffered to remain ever so long unproductive it cannot be regained, or made beneficial by any judicial proceeding ; because such a lien is only a mode of enforcing satisfaction by the mere passive holding of the creditor, and thus preventing the debtor from deriving any benefit from his own until he renders justice where it is due. It is a sort of distringas to which certain creditors may have recourse without the previous sanction of a court of justice. But the principles upon which this lien is founded, can afford no illustration or support to that claimed by this plaintiff.
The specific lien of a mortgage arises out of the express and special nature of the contract of mortgage itself; and, owing to its peculiar nature falls almost exclusively within the jurisdiction of a court of equity. But the doctrines in relation to this species of lien, it is evident, can have no bearing upon this case.
Under the civil and maritime law there are many instances of what is called privileged creditors, whose claims are allowed to operate as a lien upon certain property which has been erected, saved, or benefited by their labour. By a lien of this kind, the ship herself is bound to the material men by whom she has been repaired, to the seamen by whom she has been navigated on the high seas, &c. And such creditors may obtain the benefit of their lien by proceeding against the ship alone, without naming any person as defendant, or the holder. But however analogous this suit may appear to be to a proceeding in rem in the admiralty, the principles of the civil or maritime law, by which the lien of a privileged creditor is governed, can have no relation to this case.
The plaintiff alleges that he has an equitable lien upon the land held by this defendant, and seems to rest his claim to relief mainly upon that foundation. But an equitable lien is inseparably incident to a contract of purchase. It is a vendor’s privilege and security, founded not upon any thing expressed in the contract of sale itself, nor on any legislative enactment or rule of the common law; but on the principles of equity which declare it to be unjust, that any such sale should be made absolute, in all respects, until the whole purchase money has been paid. An equitable lien can *544 only exist in a vendor as against a vendee, and those claiming under thé vendee with notice. It may be waived or extinguished by a separate express agreement, or by an analogous express provision in the contract of sale itself; or by an implication arising from the acts of: the vendor. And it can only be sustained and enforced in a court of equity, (f) Here, however, that sale upon which this plaintiff claims the benefit of an equitable lien was not made by himself; but under a judicial authority, and according to the very peculiar provisions of an act of Assembly regulating the whole subject; so that, as on a sale made under a decree of this court, the equitable lien, if any such lien arose, could only be held and enforced by the court under whose authority the sale was made, and not by this plaintiff, (g) But this plaintiff can have no lien of any description; nor obtain relief in any other mode than that given and prescribed by the act of Assembly under which the sale was made.
By several statutes lands have been made liable to be taken in execution and sold for the satisfaction of debts; ánd as a consequence of such liability, it has become a well established principle, that it gives to the creditor a lien which fastens-from the date of the judgment upon all the lands which the debtor then has, or may thereafter acquire, so" as to be liable to be taken in execution on such judgment. The principles upon which this judicial lien rest have, however, no analogy to that kind of lien on which this plaintiff relies.
By an act of Assembly it is declared, that all lands and tenements belonging to any public debtor, after the commencement of suit against him, shall be liable to execution in whosesoever hands or possession they may be found. (h) This law gives the state a lien of a peculiar character which, it is evident, may, and, perhaps, can only, under any circumstances, be enforced at common law. (i) In England the king is allowed a similar lien upon the real estate of public debtors, (j) But this lien has been given for the benefit of the state alone; and therefore cannot be permitted, in any case, to be called into action to subserve the purposes of an individual who institutes a suit against any one who stands bound, as in this instance, only nominally as a public debtor, but in reality as liable *545 upon a contract intended and allowed only to operate as a mere private security. (k)
There are several instances in which, by express legislative enactment, it is declared, that a bond given to the state shall be a lien, and bind the real estate of the obligors for the payment of the debt. In one of those enactments a special and summary course of proceeding is prescribed for obtaining judgment against the obligors. Eut nothing is said in any of them as to the mode in which the benefit of the lien is to be obtained where the obligor may have aliened his land after having given such a bond. Upon which it has been held that the lands upon which such a statutory lien had been fastened, might be taken in execution under a fieri facias in whosesoever hands or possession they might be found. (l)
The lien of which alone this plaintiff can have any benefit whatever, either at law or in equity, is that, and only that which has been secured to him by the act to direct descents, as it was under that law the sale was made for the purpose of effecting a partition, upon which a share of the purchase money was awarded to this plaintiff with a bond and lien, given as prescribed to secure its payment. The positive provisions of the last general act to direct descents, as regards the matter under consideration, will be best understood by adverting to the previous enactments upon the same subject. As to which it will be proper to premise, that where a partition could not be made of the lands descended among the heirs, without loss or disadvantage, these acts of Assembly prescribed two modes of effecting a division of their value; first, that one of the heirs should be allowed to elect to take the whole at a valuation on his becoming bound to pay to each of the other heirs his due proportion; and secondly, if no one of the heirs would elect to take the whole upon those terms, that then the land should be sold, and the proceeds of sale divided among them. In both cases there is a sale, in the one to the heir electing to take, and in the other to a purchaser; and, therefore, there was a like propriety in both eases in having the payment of the purchase money -well secured.
The matter under consideration is then as to the nature of the security given, according to the provisions of these laws, for the payment of the purchase money, where a sale has been made in *546 either of those modes for the purpose of effecting a division of the value of the land descended.
By the original act it was declared, that where one of the heirs elected to take at the valuation, the value should he a lien and incumbrance on such land until paid; and further, that the same might be recovered by an action upon the case brought by the parties respectively entitled. (m) Whereby a lien of a specified and peculiar character was given, nearly similar, it is true, to a vendor’s equitable lien; but instead of pronouncing it to be a lien of that kind, or of sending the party to a court of equity to have it enforced ; the mode of obtaining the benefit of it was expressly declared to be by an action at common law.
By some subsequent acts it was declared, that where any person entitled should elect to take the estate, or any part of it, at the valuation; or w’here it should be sold, the bonds taken for the payment of the purchase money should remain and be a lien on the land until they should be wholly paid, (n) By these provisions the circumstances which give a lien, in the case of a purchase by election were altered; and instead of the lien originating simply from an election to take at the valuation, as in the previous law, it was made to arise only from the bonds given as well on a purchase by election as at a sale. By another act it was declared, that it should not be necessary for an elector or purchaser to give bond to each one of the representatives of the intestate; but that one bond might be given to the state to secure to the heirs their respective proportions; (o) but this act was totally silent upon the subject of a lien.
In all cases, however, it would seem, that, as an additional security for the payment of the purchase money, the legal title was to be withheld until the whole amount was paid; for, it was declared that the legal title should not be conveyed to the purchaser until the terms of sale had been complied with by his having paid the purchase money, (p) And by another act it was declared, that the legal title should not be conveyed to him who elected to take until the valuation had been paid or secured to be paid to the heirs of the intestate, (q) Upon which it has been held, that, until the purchase money has been so paid or secured to be paid, the legal title does so absolutely remain in each one of the' heirs, that he may *547 maintain an action of ejectment, and recover in his own name the entire share of the legai estate which had descendedlo him, in like manner as if no attempt to effect a partition had been previously made, (r)
By the last general act to direct descents, under which these lands descended, and in pursuance of which the sale was made, and the bond given to the state, it is declared, that such bond shall he conditioned for the payment of the amount of the purchase money to the legal representatives of such intestate, in such proportion as each may be entitled to, agreeably to the order of the court; which bond shall be and remain a lien on the said real estate until the money intended to be secured thereby shall be wholly paid; and the said bond shall be recorded among the records of the county court from which the commission shall have issued; and in case the commission shall have issued from the Chancery Court, then the said bond to he recorded in the office of the Court of Appeals for the Western Shore; and upon such bond, or an oflice copy thereof, suit or suits may be instituted against the obligors therein, or any of them, for any breach of the condition thereof by any person interested therein. And the plea of non est factum shall not be received to any such suit unless the same he verified by the affidavit of the defendant tendering the same. (s)
Here then, and in this case, that lien from which alone this plaintiff can ask to have any benefit whatever is made to arise altogether and exclusively from the bond. It is blended and associated with that instrument, and is a specific lien which is as much parcel of the bond as is that of a specific lien of a mortgage. The existence of two liens at the same time, in favour of the same party, upon the same estate, and having the same object, are utterly inconsistent and incompatible with each other; and hence it has become well established, that the taking of a mortgage of the same estate to secure the payment of the purchase money waives or extinguishes the vendor’s equitable lien, (t) So here this express lien, given by this act of Assembly as an incident of the bond, necessarily excludes and repudiates every thing like a mere equitable lien having the same object upon the same estate. And instead of the remedy upon this statutory lien being peculiarly and exclusively cognizable in a court of equity, as is that upon a pro *548 per equitable lien, it is expressly declared, that it shall only be enforced by a suit at common law upon the bond itself. The lien security, and the remedy upon it, in this respect, are alike new and specially prescribed; neither the one nor the other is left to be ascertained by inference or analogy.
I am therefore of opinion, that no mere equitable lien can be presumed to arise from any sale of a real estate made under this law for the purpose of effecting a division of its value; and that this plaintiff can have no remedy whatever for recovering the amount of the purchase money due to him, other than that which has been specially prescribed by this act of Assembly, under which the sale has been made and the bond given.
Whether the first judgment which may have been obtained, as in this instance, upon a bond of this description, by any one of the heirs, for whose security it was given, so merges the whole bond ' as that no other suit can be brought upon it against the same obligors ; or so as to leave to the other heirs no other mode of proceeding for the recovery of their respective shares than by a scire facias upon the judgment thus recovered, it is not necessary now to determine. But it is clear, that whether the bond has been taken under the direction of the Court of Chancery, or of a county court, or whatever may be the proper course of proceeding, the remedy must be at common law upon the bond itself, or upon that judgment by which the bond has been absorbed.
This last general act to direct descents declares, that the legal estate shall not be conveyed until the terms of sale shall have been complied with by the purchaser having paid the purchase money; and in relation to the estate held by the purchaser, it is said to be an equitable interest therein before any deed shall he executed for the estate sold. And again it is said, that the county court or Chancellor shall be satisfied, that the purchase money has been fully paid before a conveyance is ordered to be made, (u) Whence it is clear, that the lien, the remedy upon it, and its final disengagement by a conveyance are all expressly declared to arise out of,'and to be attendant upon the bond; and to be chiefly or altogether a continuation or part of the judicial proceedings of that tribunal to which the application had been made for a partition of the estate. (w)
. It is declared, that the bond shall remain as a lien until the *549 money intended to be secured thereby shall be wholly paid. And therefore it would seem that this statutory lien, thus blended with such a bond, must be co-cxtensive with the whole interest of the heirs of the intestate. .But it cannot be so in all cases.
Here it has been shewn, that Reuben Ridgely, one of the heirs, was the purchaser; and consequently, the bond which he gaye, could not, as to himself, have been intended to secure more than the amount of the four shares belonging to the other heirs. The purchase by him, he being one of the heirs, gave him the same sort of undivided interest in the whole which another purchaser would have had, who had paid to him his share of the purchase money. But it appears, that Amelia Ridgely, another of the heirs, became bound by this bond as the surety of Reuben Ridgely. Whence it necessarily follows, that she thereby tacitly and totally waived and extinguished her lien; because, as regards her interest, no bond has been given to secure her share of the purchase money; and as no lien can arise but upon a bond given as a security to her; the lien which would otherwise have so arisen must be considered as having been suppressed by this, her own deliberate act, which repudiates the existence of any such lien. And, therefore, since she has thus precluded herself from any such lien upon the land, and has trusted entirely to the personal liability of her co-obligor Reuben Ridgely, the purchaser, it follows, that this bond lien extends no further than as a security for three out of five shares of the purchase money for which the land sold.
It appears, that Elhelbert Iglehart, another of the five heirs, brought suit upon this bond; and, on obtaining judgment, sued out a fieri facias which was levied on this land, and the whole of it sold by the sheriff to this defendant. This sale must have passed all the interest of Reuben Ridgely, whose property was ordered by the fieri facias, to be taken and sold to satisfy the debt due by him to Elhelbert Iglehart, for whose use the suit upon the bond was instituted; and that equitable interest of Reuben Ridgely, as has been shewn, amounted to two-fifths of the whole. But as Etheliert Iglehart caused his execution to be levied upon the very same land which was bound by the bond lien as a security for the payment of his one-fifth of the purchase money, and caused the whole to be sold, he has so obtained satisfaction to the full extent of that lien, and thereby virtually extinguished it in favour of this defendant, the purchaser at the sheriff’s sale. (x)
*550 In the case of a recognizance, if the conusee purchases, or accepts a grant of the land bound by his recognizance, he thereby discharges his lien; (y) so here, this heir, by taking in execution and having sold the land bound to him thereby discharged his lien; since it would be against all law and equity to suffer him to retain his lien, so as in any manner thereby to obtain a satisfaction for what, as in this instance, might remain unpaid, from the very same fund; and that too, to the prejudice of third persons. But, as in the case of a statute merchant which, because of its being sealed by the conusor himself, may be treated as a mere personal obligation by the conusee, who may waive all benefit of the lien connected with it; (z) so here, although this bond lien, to the extent of the interest of Ethelbert Iglehart, has been exhausted and extinguished by the levy and sale under his execution; yet that cannot prevent him from pursuing his remedies upon the personal obligation against the obligors until he has obtained full satisfaction.
I am therefore of opinion, that this defendant has obtained, by his purchase from the sheriff, an interest to the extent of three-fifths of the whole of the estate, unencumbered by any lien whatever in favour of the three heirs whose interests were covered by the execution in the manner described.
But as regards the interests of this plaintiff, it is evident, that no act which has been or could be done by his co-heir Ethelbert Iglehart, by the institution of a suit upon the bond, or by causing the land to be sold under execution or otherwise, can be permitted, in any respect, to prejudice the rights, or to impair the obligation and lien belonging to this plaintiff. His remedies or forms of proceeding may have been, in some particulars, varied; but the substance of them cannot have been affected in any manner whatever by any proceeding or conduct of his co-heirs alone. And those remedies whether upon the bond and lien, or upon the judgment and lien; because of the bond having been transformed into a matter of record by the judgment, (a) it is most manifest must be by a proceeding at the common law as prescribed by the act to direct descents; since there can be no equitable lien of any description which can be dealt with by this court.
It is unnecessary to say any thing as to the want of proper parties, which has been set down among others of the causes of this *551 demurrer; because if there were no other or more substantial objections to this bill, the case would be ordered to stand over with leave to amend and make proper parties; but as the other objections go to the substance and merits of the complaint, the case must be now finally decided.
Whereupon it is Decreed, that the plaintiff’s bill of complaint be and the same is hereby dismissed with costs, to be taxed by the register.
See this case as disposed of by the Court of Appeals, 6 G. & J. 49.

 Jacob Law Dict. v. Lien.

 Gladstones. Birley, 2 Meriv. 403.

 The United States v. Fisher, 2 Cran. 358; Conrad v. The Atlantic Insurance Company, 1 Peters, 386.

 Jacobs v. Latour, 15 Com. Law Kep. 388.

 Mackreth v. Symmons, 15 Ves. 330; Iglehart v. Armiger, 1 Bland, 519.

 Iglehart v. Armiger, 1 Bland, 527; Andrews v. Scotton, 2 Bland, 656.

 March, 1778, ch. 9, s. 6.

 Davidson v. Clayland, 1 H. & J. 546.

 The United States v. Fisher, 2 Cran. 358; Jones v. Jones, 1 Bland, 443.

 Ex parte Usher, 1 Ball & Bat. 197.

 1769, ch. 11, s. 12; 1773, ch. 26, s. 9; 1791, ch. 85, s. 9; 1792, ch. 38, s. 3; 1799, ch. 80, s. 5 and 17; 1802, ch. 100, s. 12; Lane v. Gover, 3 H. & McH. 394.

 1786, ch. 43, s. 9.

 1802, ch. 94, s. 5; 1809, ch. 160, s. 6.—

 1815, ch. 205.

 1799, ch. 49, s. 3.

 1802, ch. 94, s. 6.

 Jarrett v. Cooley, 6 H. & J. 258.

 1820, ch. 191, s. 22.

 Mackreth v. Symmons, 15 Ves. 330; Iglehart v. Armiger, 1 Bland, 519.

 1820, ch. 191, s. 24 and 25.

 Stuart v. Laird, 1 Cran. 309,

 Jacobs v. Latour, 15 Com. Law Rep. 388.

 Bac. Abr. tit. Execution, B. 5.

 Bac. Abr. tit. Execution, B. 2.

 Higgen’s case, 6 Co. 45.