ANNE HARDY AND THOMAS TALBURTT *vs.* JAMES C. SUMMERS AND WIFE.—*December* 1838.

Under the act to direct descents, the filing the petition and the appointment of the commissioners are *ex parte;* and the proceedings of the county court in affirming, or rejecting, their return, are summary, and neither law or usage requires, that the proofs exhibited by the parties should be reduced to writing, or introduced into the record of the proceedings before it.

And where a bill was filed for an injunction, to restrain parties from enforcing a partition made under that act, upon the ground that the parties entitled, had previously divided the property themselves, and stating other circumstances showing the plaintiff's title to relief, it was *held,* that such partition was no bar to the relief prayed.

A partition made by the county court is a nullity, if a division had been before made by the parties themselves,—the act to direct descents only giving power to the courts to divide, when the parties entitled are incompetent, or cannot agree upon the division thereof.

Under what circumstances the contract of a *feme covert* is binding.

The fact of the possession of a party, whose rights are supposed to be involved in a purchase, is sufficient to put the purchaser upon the enquiry, and failing to make such enquiry, he is in equity visited with all the consequences of notice.

Upon the motion to dissolve an injunction, the answer is to be regarded, only, so far as it is responsive to the bill.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 30th December 1837, by *James C. Summers* and *Mary* his wife. It alleged that, about the 4th February 1819, a certain *Jonathan Hardey* departed this life, intestate, leaving the said *Mary* and *Anne Hardey,* his only daughters and heirs at law; that he died seized of personal and real estate in *Prince George's county,* which he had frequently declared he would dispose of by last will and testament in manner following, that is to say; that to the said *Anne Hardey* and her heirs, he intended to devise all that parcel of land, called and known by the name of the *Wedge,* another tract adjoining it, and one half of his mill and mill seat, &c.; that to the said *Mary* and her heirs he intended to devise all that tract called the *South part of the White Marsh,* one half of the mill and mill seat, &c.; that to *Walter Greenbury Hardey,* son of the said *Anne,* he the said *Jonathan Hardey* intended to bequeath certain personal property enumerated in the bill. That to *Jonathan A. Summers,* he intended to bequeath certain other enumerated property; that he the said *Jonathan Hardey* prepared an instrument, in the nature of a last will and testament, conforming to the views herein before mentioned, but suddenly departed this life without executing the same; that soon after the death of the said *Jonathan,* the complainants and *Anne Hardey* had interviews, for the purpose of agreeing on the manner in which the property of the said *Jonathan* should be partitioned and divided between them; and thereupon it was agreed by and between them, that in as much as the disposition the said *Jonathan* their father contemplated making of the said property by will, was a very reasonable, natural, and equitable disposition of the same, that it should

be partitioned accordingly; and that provision should be made for the payment of his debts, by allowing the said *James C.* and *Mary* his wife to take certain articles of personal property left by him of inconsiderable value, and in consideration thereof to pay all the said *Jonathan's* debts; that the property of the deceased on the 22nd June 1819, was accordingly divided, and the said *Anne* and *Mary* signed a bond binding them respectively to abide by such partition as will appear by the bond exhibited with the bill; that the said *James C.* fairly and fully assented to the execution of said bond by his wife *Mary*, and has always been, and is still willing to abide by the terms thereof; that the said *James C.* accordingly discharged all the debts of the said *Jonathan;* that the several parties took possession of the property of said *Jonathan*, under such division, and used the same; that the said *James C.* has made many improvements on his real estate, thus acquired, and has purchased adjacent property to make the same more valuable; that the said *Anne Hardey* has greatly injured her portion of the said estate, and that the said *Anne* having sold and conveyed to one *Thomas Talburtt* her right and interest in the real estate of her said father, they now pretend that, the said agreement is not binding in law, because the same was not reduced to writing, nor signed by the parties to be charged thereby, or some person or persons thereto lawfully authorised; and that the said bond which was executed in pursuance of the said agreement is of no force in law, because it was not signed by the said *James C. Summers.* The complainants insist, that said agreement is binding, and that the said *Thomas Talburtt* purchased with full knowledge thereof; that the said *Thomas*, immediately after he had purchased from the said *Anne*, took possession of the part allotted to and held by her as aforesaid, and asked complainants to convey the same to him, which they agreed to do on his having a deed for the purpose prepared and tendered to them; yet the said *Thomas* did on the 17th November 1836, apply by petition to *Prince George's county court* for a commission to divide or value the real estate of the said *Jonathan*, which being granted to him the said *Thomas* and

issued, it was in such manner thereon proceeded by the commissioners therein named, that they partitioned and divided the said real estate, by allotting to the said *Thomas*, that part of the same which had been taken and held by the complainants as aforesaid, and in pursuance of the' said agreement and bond, with the exception of about twelve acres, and allotting those twelve acres, and that part of the said real estate, which was formally taken and held by the said *Anne* as aforesaid, to the complainants. That the said commissioners having reported the same, their proceedings were ratified and confirmed, notwithstanding the complainants objected thereto, on the ground of a former partition and division made as aforesaid, and complainants are now in danger of being ousted and turned out of possession of their said land and premises, which the said *Thomas* threatens. *Prayer* for general relief and an injunction against *Anne Hardey* and *Thomas Talburtt* their agents, and to restrain them from interfering with, or entering upon, the said real estate held by the complainants, and for an order of publication against the said *Anne* and *Thomas* as non-residents.

The bond referred to and filed with the bill was executed by *Anne Hardy* and *Mary Summers*, and was as follows:

Know all men, &c., that we, *Ann Hardey* and *Mary Summers*, are held and firmly bound one to the other, their heirs and assigns, in the penal sum of, &c., to be paid by the party or parties failing, to the party or parties complying, to the which payment well and truly, &c., we and each of us bind ourselves, &c.; sealed 22nd June 1819. The condition of the above obligation is such, that if the above bound *Ann Hardy* and *Mary Summers* do abide by and stand to the division of the property of *Jonathan Hardy* deceased, of, &c., as we do agree to divide the said property as follows:—All that part or parcel of land, and then proceeded to enumerate the property partitioned to the said allegors respectively; and then concluded as follows: "All the remainder of the said deceased's estate to *Mary Summers*, after her paying all the just debts of

the said deceased, and valued at the request of the parties afore-
said, by *John Soper* and *Richard Marshall,* then," &c.

On the 30th December 1837, the Chancellor (BLAND) grant-
ed an injunction and order of publication.

*Thomas Talburtt* answered the bill, declaring his ignorance
of how the deceased *Jonathan* intended to divide his estate,
and his disbelief of the existence of an instrument in the na-
ture of a will; also declaring his ignorance of any interviews
between the said *Anne* and complainants in which the terms
of a division of their father's estate were adopted.   His an-
swer admitted his knowledge of the bond filed with the bill,
but that he was informed by the said *Anne,* that the said *James
C. Summers* told her, that unless she entered into said agree-
ment she would receive no part of said estate &c.; that the said
agreement was void, the said *James C.* not being a party to it,
and being made by a *feme covert.*   The alleged improvements
were next denied, and the depreciation of *Summers*' part in-
sisted upon, and the manner of its injury set forth at large.
The damage to *Ann's* portion of the estate was also denied.
He also denied that he knew any thing of the division of the
property at the period of his purchase; that he had however
then seen the agreement filed with the bill.   The proceedings
mentioned in the bill before *Prince George's* county court, to
divide the land, were also admitted as stated, but the proposal
to execute a deed to complainants on its being tendered was
denied, &c.

The answer of *Anne Hardy* admitted that her father had in-
tended to give his property to her and her sister, and had pre-
pared a sketch of his intended will.   She further admitted
that, ignorant of her rights she consented to a division; that
she executed the *bond* filed with the bill being ignorant of its
contents, not having read the same, neither did any one read
or communicate the subject of the same to her; that she exe-
cuted the same in the presence of complainants, and that the
said *James C.* declared, that if she did not execute the same,
she would get no portion of her father's estate; that consider-
ing herself at his mercy, he then having every part of the said

estate in his hands, she consented to execute the bond: That the said *Mary* did not execute the same voluntarily, but was forced to sign the same, as she believes, by the cruel treatment of her husband. This answer then proceeded to allege various matters of defence—admitted her sale to *Talburtt*, and the proceedings before *Prince George's County Court.*

At July term 1838, there was a motion to dissolve the injunction on the bill and answers, which being overruled, the present appeal was brought by the defendants.

The cause was argued before ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

T. G. PRATT and T. S. ALEXANDER for the appellants contended that the injunction ought to be dissolved.

1st. Because the agreement set out in the bill was not binding on the appellant *Anne Hardy*, nor fit to be executed by a court of equity.

2nd. Because the appellant *Talburtt* is shown to be a purchaser for valuable consideration and without notice, and consequently is not to be affected by any such agreement.

3rd. Because his failure to execute said agreement upon the offer of the appellant *Talburtt*, deprives him of all equity (if any he ever had) at this time to require its specific execution.

4th. Because the decree for partition of *Prince George's* County Court is a bar to the relief asked upon the agreement, the validity of that agreement having been properly put in issue in the partition cause.

The counsel cited 7 *Mass.* 19. 1 *Mad. C. R.* 14. 2 *Chitt. Eq. Dig.* 815. *Serg. on Vend.* 278, 279, 280. 1786, ch. 45, sec. 8.

J. JOHNSON for the appellees insisted, that the bond was valid, the husband of the feme covert obligor having assented to its execution. *Bosley vs. McKim*, 7 *Harr. & John.* 501. 1 *Cox's Cases*, 172. 1 *Thos. Coke*, 153. *Barnfather vs. Jordan and another*, 2 *Doug.* 452. *Baxter vs. Smith*, 6 *Barney*,

457, and that equity would therefore protect and enforce that contract.

DORSEY, Judge, delivered the opinion of the court.

It is insisted that, the grounds for equitable relief, as set forth in the bill of complaint, were, heretofore, and finally adjudicated by *Prince George's* county court in the proceedings therein, under the act of descents, for the division of the real estate of *Jonathan Hardy,* between *Talburtt,* the grantee of *Anne Hardy,* and *Mary Summers* and her husband; and that such adjudication is a bar to the relief now prayed for.

The case set forth in the complainant's bill is one, in which a court of equity only, is competent to grant the appropriate relief.

If the facts, stated in the bill, be true, the relief asked for, could not be denied. Whether these facts be true or false, it is the province of a Court of Chancery to decide upon proofs regularly before it, in a cause conducted according to the forms of equity proceedings.

The complainants, before their equitable claims could be definitely decided, had a right to a discovery on oath by the defendants, and to have all the proofs on which those claims depended, taken in due form and submitted to the decision of a court of equity, and, if aggrieved by its decision, to have it reviewed in the highest appellate tribunal of the State, upon a full record of all the proofs and proceedings in the cause. Of these rights *Prince George's* county court could not deprive them, by the summary exercise of the powers specially delegated to it under the act of descents. To permit it to do so, would be an unheard of innovation on the long established forms of litigation in equity; would deprive the complainants of their right to purge the consciences of the defendants, or to bring their entire case, upon its merits, for trial before an appellate tribunal, or to have any adjudication thereon by the Court of Appeals. Under the act of descents, the filing the petition, and appointment of the commissioners, is an *ex parte* proceeding, and the proceedings of the county court in deter-

mining on the confirmation or rejection of the return of the commissioners, are summary in their nature, and no law requires, nor is it customary for the court to direct, that the proofs exhibited by the parties, should be reduced to writing, or in any way introduced into the record of the proceedings before it. An appeal under such circumstances could not avail the appellant, even if permitted, in the court of last resort.

But there is another reason why the Chancery court should not be thus abruptly arrested in the prosecution of this suit on the ground of a prior adjudication in *Prince George's* county court; and that is, that if the allegations in the bill be true, the alleged prior adjudication is a nullity, being a proceeding *coram non judice.* The act of descents only giving power to the county courts to divide the real estate of a deceased person, where the parties entitled to the deceased's estate cannot agree upon the division thereof. The principle of *res adjuicata*, therefore, on the present appeal, interposes no obstacle to the continuance of the injunction issued in this cause.

The next in its proper order, of the reasons assigned for the reversal of the Chancellor's orders continuing the injunction is, because the agreement set out in the bill being made with *Mary Summers*, a married woman, is not binding upon *Anne Hardy.* The agreement, as charged in the bill and not denied in the answer, was made in the presence of the husband and assented to by him, and according to the statements in the bill, as admitted or not denied in the answers, the agreement was consummated by an actual division of the real estate of the deceased between the sisters, each taking possession, and holding according to such division, for at least fourteen years. The complainants still hold under such division the portion signed them; *Anne* held her share till she conveyed to *Talburtt*, and after such conveyance he took possession of *Anne's* part, and offered to execute conveyances between himself and the complainants, conformably to the partition which had been made. We know of no principle, either of law or equity, under the circumstances, in which it was made, that would invalidate the agreement, simply on the ground of

the coverture of one of the parties.   As authorities for a con-
trary doctrine, see *Baxter vs. Smith*, 6 *Binney* 427.   *Barns-
father and another, Executor of Moffat, against Jordan and
another*, 2 *Douglas* 452.   *Thos. Co. Tit.* 153, and *Bowyer vs,
Peake*, 2 *Freeman's Rep.* 215.   To refuse relief in the case be-
fore us on this ground only, would be against all equity and
conscience.

The next reason, assigned for the reversal of the Chancel-
lor's order is, that the defendant *Talburtt* is a *bona fide* pur-
chaser without notice of the agreement entered into by *Anne*
and her sister, or the proceedings under it, and as such, must
be protected in a court of equity, against such agreement and
proceedings.   But this defence if properly pleaded, could not
avail the defendant *Talburtt*.   The actual possession of the
complainants, according to the agreement and division under
it, is a sufficient intimation of their rights, to have put *Tal-
burtt* upon an inquiry into their nature, and failing to make
it, he is in equity vested with all the consequences of a know-
ledge of their title.

The only remaining question to be considered is, has the
equity of the bill been sworn away by the statements in the
answers.   We are clearly of opinion that it has not; most of
the material facts constituting the complainants' equity, have
been admitted, or not denied by the answers,   As far as the
statements contained in the answers are responsive to the char-
ges in the bill, the complainants' equity remains wholly unim-
paired.   The matters in avoidance, relied on in the answers,
which, when put in issue, if proved, might strip the complain-
ants of all claim to relief, not being responsive to the bill, can-
not in this stage of the cause be relied on by the defendant,
as grounds for the dissolution of the injunction.

The orders of the Chancellor continuing the injunction is
affirmed with costs,                    ORDERS AFFIRMED.