(Decided 7th February, 1877.)

---

JOHN J. JENKINS and ANTOINETTE his Wife *vs.* THOMAS SIMMS, Adm'r of ROBERT SIMMS.

*Election under Art. 47 of the Code—Effect of the death of party Electing, before the terms of his Election are complied with —Jurisdiction of Courts of law in such cases— Mutation of Realty into Personalty—Partition.*

Under proceedings at law to divide the real estate of an intestate under Art. 47 of the Code, a commission was issued and returned, and the return of the commissioners was ratified by the Court. Four of the heirs including R. S. elected in their order of priority to take four of the five lots into which the estate was divided, at the valuation of the commissioners. The Court passed an order confirming their election and referred the case to the auditor of the Court to ascertain the respective proportions of said valuations due to the several heirs. After the auditor's report was filed, but before it was finally ratified, R. S. died intestate without issue, and before having paid or secured

the sums ascertained by the auditor to be due by him to the other heirs, and leaving T. S., a brother of the whole blood, and several brothers and sisters of the half blood.  HELD :

1st.  That the inchoate title of R. S. derived under his election, descended to T. S. as his heir-at-law, by whom the same could be perfected.

2nd.  That the Court in which the petition to divide had been filed had juris-diction to perfect said title on the petition of the heir, *filed in the partition proceedings*.

3rd.  That this was not a case of the mutation of realty into personalty.

4th.  That the heir-at-law of R. S., *in the capacity of his administrator*, had no standing in Court to maintain a petition for the perfection of said title.

Where the general authority is given to a Court to make partition, all the powers necessary to execute that authority must be implied.

APPEAL from the Circuit Court for Charles County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*Frederick Stone*, for the appellants.

*John P. Poe*, for the appellee.

BOWIE, J., delivered the opinion of the Court.

The questions involved in this appeal are of unusual interest and great practical importance, being the construction of those sections of Art. 47 of the Code of Public General Laws, title, "Inheritance," which confer upon heirs-at-law, under certain circumstances, the right of election, and defining the mode in which that right is to be exercised.

It is said to be the first time since the enactment of the Acts to direct descents in this State, that the points now raised, have been presented for judicial decision.

The cause was argued orally with great ingenuity, zeal and ability by the counsel on each side, and the Court being unable to agree at its first hearing, it has been re-argued on notes at the request of the Judges that it might be considered by the full bench.

The facts material to be considered as shown by the record are substantially as follows: Anthony B. Simms, late of Charles county, Md., died intestate, leaving as his heirs-at-law seven children by different ventres, Robert and Thomas, children of his first wife, and Antoinette, wife of John J. Jenkins, George Simms, Mary, Bertha and Henry Simms, (the two last being minors,) children of his second wife. On the petition of Robert Simms and others, filed in the Circuit Court for Charles county, on the 21st of February, 1874, a commission to divide the lands of his deceased father was issued, executed, and in due time returned. On the 23rd of July, 1874, an order *nisi* was passed, and the same was finally ratified on the 16th of November, 1874.

The Commissioners by their report divided the lands into five lots; of which Robert Simms, the eldest son, elected in writing to take lot No. 2, Thomas, the second son, elected lot No. 1, George, the third son, elected lot No. 3, and Antoinette with her husband's assent, elected lot No. 4. According to the petition of Thomas Simms, (which is admitted by the answer of the appellants,) on the day of the election the Court passed an order confirm-ing the elections made by the several parties, "upon their paying to the other parties entitled, their respective pro-portions of said valuations, or giving bonds for the same," and that the case be referred to the auditor to state the expenses and ascertain the different proportions.

The Court in its opinion states, the order required the parties electing to pay those entitled, one-third in cash and to give bonds at one and two years for the balance, *or to pay the whole in cash.*

The parties electing took possession of their several lots about the first of January ensuing.

The auditor's report was filed on the 3rd of April, 1875, and finally ratified on the 29th of May following. In the meantime, on the 25th of May, four days before the final ratification of the report, Robert Simms died intestate, leaving Thomas, the only brother of the whole blood surviving him. Thomas Simms became the administrator of Robert, and on the 18th of November, 1875, filed his petition in his character as administrator, in the Circuit Court for Charles county, in the case of the matter of the division of the real estate of A. B. Simms, setting out the foregoing facts, and further alleging that his intestate died about the 25th of May, 1875, without having paid or given his bonds to the other parties entitled, for their respective proportions: that he left personal estate sufficient to pay all his liabilities, and praying an order of Court authorizing him to pay into Court, the several amounts ascertained by the auditor to be due from Robert Simms to the other heirs of A. B. Simms, by virtue of his election. The appellants answered and admitted the facts stated in the petition, but insist that Robert Simms, deceased, having neither paid for, nor given bond as stated, no title whatever to said lot passed to him in his life-time, and that the said lot remains a part of the real estate of A. B. Simms, and is subject to election by the other heirs, or liable to be sold by the Commissioners for their benefit, which they prayed the Court to order. The Court dismissed the petition of Thomas Simms, and refused the prayer of the appellants, from which order of refusal the latter appealed.

The election made by Robert Simms as far as it went, was in strict pursuance of the statutory right conferred by the Acts to direct descents, codified in Article 47, Code of Public General Laws, title "Inheritance."

As one of the heirs-at-law of his deceased ancestor, he had an undivided estate in fee-simple, in all the lands of

which his father died seized. Election is but one of the modes of partition provided by law, where the estate is not susceptible of being divided into as many parts as there are persons interested. Where the estate is susceptible of division into as many parts as there are heirs, no right of election exists; in that event the partition is made by allotment by the Commissioners. *Art.* 47, *secs.* 41 *to* 51 *inclusive.*

The rights of election and preference, secured to certain heirs by the statutes referred to, (as declared by this Court in the case of *Chaney & Wife vs. Tipton,* 11 *Gill & Johnson,* 253,) must be regarded as intrinsically valuable. "They become vested by the death of the intestate, and may be passed to a grantee." "The Acts of Assembly referred to, authorize the alienee of an heir, in the cases therein provided for, to stand in the place of the vendor, as to the right of election or distribution. If the interest or claim be such as a Court of equity will specifically enforce, the remedy must be sought by the proper process of the Chancery Court. For any other contract in relation to the land, the ordinary remedies at law or in equity, as the case may require, will be open to the party entitled." *Ibid.,* 3 *Gill,* 334.

The proceedings in which the foregoing propositions were announced, were had on the equity side of the Court, under the Acts of Assembly of 1820, ch. 191, sec. 9, 1827, ch. 208, sec. 2, 1829, ch. 32, which are since codified under Article 47, of the Code of Public General Laws. Partition prior to these Acts, was regulated in this State by the Act of 1786, ch. 45, and its supplements, which were repealed by the later enactments embodied in the Code.

Both Courts of law and equity, had jurisdiction in cases of partition, but each of them was required to proceed in the division of the real estate of an intestate, among his heirs, *where* the parties themselves cannot agree

upon a division, in accordance with the provisions of the Act to direct descents, which secures to certain heirs the rights of election and preference. *Chaney vs. Tipton,* 11 *G. & J.,* 253; *Hughes' Case,* 1 *Bland,* 46.

The proceedings by petition in the County Court, for partition have been held to be "*ex parte,*" and summary, and not to require that the proofs exhibited by the parties, should be reduced to writing, and made part of the record of the proceedings, nor do they exclude the jurisdiction of a Court of equity, when a partition has been ratified by the County Court under it, in cases where the party has only equitable rights, or needs the process of a bill of discovery. *Vide Hardy vs. Summers,* 10 *G. & J.,* 316.

The Circuit Courts of this State, are Courts of general jurisdiction, and to divest them of power to act over subjects committed to them, terms to that end must be employed in the statute, expressly or by necessary implication. *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 345.

It is a maxim of law and equity, that in cases of concurrent jurisdiction, the Court which has first assumed control over a subject-matter of controversy, is entitled to retain it. *Brooks vs. Delaplaine,* 1 *Md. Ch. Dec.,* 351; *Winn & Ross vs. Albert & Wife,* 2 *Md. Ch. Dec.,* 42, *affirmed in* 7 *Gill,* 446. It is apparent from the facts developed by the record, that the Circuit Court of Charles county had obtained regularly jurisdiction and authority to divide and make partition of the estate of Anthony B. Simms, that a commission had been issued and executed, the division made of the estate ratified and confirmed, and the right of election arising from that division, (the number of lots being less than the number of heirs) had been exercised in writing, so that four, out of five lots, were assigned to as many heirs.

All that was necessary to finally close the case and consummate the election, was to ascertain the proportions of each heir to the amount of the value of the lots elected,

and to give bond for or pay the same. If the terms of the election were cash, or giving bonds for the payment of such proportions as the auditor might ascertain, the amount must be ascertained, either as cash, or credit payments, before the condition could be complied with. The sections prescribing the duty, and form of the bonds to be given, are sections 51 and 55, of Article 47. The former requires that the elector, "*at the time* of making the election, shall give bond or bonds with two or more sureties to be approved by the Court * * * to the other person or persons entitled to said estate, for their several proportions of the sum of money at which said estate is valued," etc.

The latter, sec. 55, enacts, "It shall not be necessary, if the Court shall deem it to be the interest of all concerned, for the purchaser of any part of said estate, or where any one or more of the representatives of such intestate shall elect to take the same or any part thereof, * * * to give bond to each of the representatives of such intestate; but such purchaser or person who may elect, etc., may give bond to the State of Maryland in such penalty and with such sureties as the Court may direct and approve, conditioned for the payment of the amount of the valuation or purchase money, (as the case may be,) to the legal representatives of such intestate, in such proportions as each may be entitled to."

These provisions imply a preceding order of the Court, before they can be complied with, or their non-execution can amount to a default in the person electing.

In the interval between the reference to the auditor to ascertain the proportion of the heirs to the amount of the valuation of the lots elected, Robert Simms dies intestate, and Thomas, his next of kin, heir-at-law and administrator, comes in without delay by petition, praying leave to pay the money. There is no express provision in the Code, for this exact condition of things, but it is expressly pro-

vided in section 46 of the Code, "In all cases where a person is entitled by purchase *or otherwise* to the undivided estate of an heir to a person dying intestate, and such person cannot agree with the other heirs or persons entitled upon a division  *  *  *  *   then any such person *shall have the right to proceed under this Article,* and the same right of election, as the heir would have had under whom he claims."

This section is a codification of the 29th section of 1820, ch. 191, and 1829, ch. 32, sec. 1.

The former extended the right of election to an *alienee* of the vendor; the latter, to the heir or devisee of a person entitled to elect, and embraces clearly the petitioner, Thomas. The 46th section of the Code embracing both, expressly authorizes him to proceed under this Article.

How shall he proceed? Is it necessary he should commence *de novo,* or shall he come into the case as heirs and administrators do in other cases at law by petition or suggestion in writing.

It cannot be doubted that a Court of general jurisdiction has authority to allow the legal representatives of persons, who have acquired *inchoate* rights, under their proceedings, to comply with the obligations of their deceased intestate, and complete the proceedings which would be otherwise imperfect and ineffectual. It would be a legal anomaly, to make the consummation of proceedings in Courts of justice, depend upon the continuance of the lives of their suitors.

Where the general authority is given to a Court to make partition, all the powers necessary to execute that authority must be implied.

It does not in our opinion require the intervention of a Court of equity, to complete a proceeding in a Court of law, invested as in this case with concurrent jurisdiction. The election of Robert Simms, constituted him a purchaser, subject to certain conditions imposed by the Court, which he was ready and willing to comply with.

The appellants, in their printed brief say, the sole question presented by the record in this case is, whether the party, who is entitled to elect a part of the real estate of an intestate, and who does in fact so elect, by filing his election in strict conformity to the statute, but who does not file his bond, shall be entitled to the lot so elected at the time of his death. We have examined the record chiefly in this aspect, and concur with the learned Judge who decided this case below, in the position, that the election of Robert Simms to take lot No. 2, has all the elements of a contract, and it cannot now be treated as a nullity, "imposing no obligation on the one side, and giving no right on the other to enforce it," and that there is nothing in the case of *Jarrett vs. Cooley*, 6 *H. & J.*, 258, in conflict with that position.

We are also of opinion, that the doctrine of mutation, or conversion, has no application to the case before us, the property in question remaining realty, whether it belongs to the estate of Robert, or of A. B. Simms.

Upon a proper petition from the heir-at-law of Robert Simms, the Court below has, in our judgment, power to complete the election now "*in fieri*." Thomas Simms in his character as administrator has no standing in Court, to maintain his petition. A power to institute proceedings in a Court of general jurisdiction, implies necessarily, the power to consummate them in the same Court, between the original parties and those claiming under them. "*Finis coronat opus.*"

The language of the Code above cited, referring to elections, clearly conveys the power which must otherwise have been incidental. For these reasons, we affirm the order of the Court below, appealed from, with costs to the appellee.

*Order affirmed.*

(Decided 9th February, 1877.)

GRASON and ALVEY, J., dissented.