ELIZABETH BAYNARD *vs.* WILLIAM NORRIS AND MARY ANN, HIS WIFE, RACHEL HEIDE, J. P. JONES AND J. MORRIS.—*December*, 1847.

A testator directed, that out of a certain portion of his real estate absolutely devised to his three children, his widow's life estate of one-third of his whole property should be allotted by certain commissioners, to be appointed by the Orphans court, and the other portion so devised to be divided among said children. The commissioners intending, under their apportionment, to carry into effect the directions and wishes of the widow and children, erroneously and contrary to such directions and wishes, made one lot subject to the widow's life estate, and assigned a lot intended by the parties, for one, to another of the devisees. *Held*, that the Court of Chancery might correct the error, reform the award, and make it conform to the directions of the parties, the tenants for life, and in remainder in fee; and, also, decree that the parties should account for rent and profits received under the erroneous award.

The widow and one of the children claiming under the erroneous award, according to its description of the property, mortgaged the same to third parties, while in fact, the children and widow were in possession and enjoyment, according to their actual understanding, and not according to the award. The mortgagees claimed the property as *bona fide* purchasers, but omitted to state in their answer that their grantor or mortgagor was at the time of the conveyance, seized or pretended to be seized, and was possessed of the mortgaged estate. *Held*, that the mortgage constituted no objection to reforming the award of the commissioners.

The fact of the possession of a party, whose rights are involved in a purchase, is a sufficient intimation of those rights, to put the purchaser upon an inquiry into their nature, and failing to make it, he is in equity visited with all the consequences of the knowledge of the title.

Where a testator devises a certain portion of his real estate to his daughters absolutely, with provision for the appointment of commissioners to divide the same among them by the allotment of such commissioners, the legatees take legal estates, under and by virtue of the testator's will, in the portions of the realty, severally, and to them respectively assigned; their title is not created by the allotment.

APPEAL from the Equity side of *Baltimore* County Court.

The will of *George Heide* devised to his wife *Rachel*, one equal third part of

"My real estate, for and during the term of her natural life, to be *laid off and fixed in that part of my real estate, devised absolutely* to my residuary legatees, by three judicious men, to

be appointed by the Orphans court of *Baltimore* county, or the same may be made up in whole or in part of the annuities or yearly ground rents owned by me.

"All the rest, residue and remainder of my estate, real, personal and mixed, I give and devise as follows:

" The dwelling-house and warehouse and lots of ground on *Cheapside*, in the city of *Baltimore;* the lot of ground and premises on the south side of *Baltimore* street, between *Paca* and *Green* streets, and extending to *German* street; the lot of ground and premises purchased of *Samuel Chase;* all my annuities or yearly ground rents, with the fee and reversion of and in the ground from which they arise, &c. &c., shall be allotted to and equally divided among my three daughters, *Eliza Baynard, Caroline Ferguson* and *Mary Ann Norris*, in manner and by the persons hereinafter directed, to hold absolutely as tenants in common, without any limitation or restriction, in part and on account nevertheless of their shares of the whole residue of my estate."

The general residue of his estate the testator devised in trust for his three daughters, to be allotted by the five persons who might be appointed as aforesaid. The award of any three, &c., to be final and conclusive.

The five commissioners allotted to *Eliza Baynard*, among other matters:

"All that lot of ground and appurtenances conveyed by *James Hutchings* to the aforesaid *George Heide*, by deed dated 2d August 1792, and recorded, &c., valued at $1,400, marked C."

To *Mary Ann Norris* they allotted all the estate of which *George Heide* died seized and possessed of, under a certain deed from *Benjamin Griffith* to him dated 9th February, 1792, marked B., *to commence upon the death of Rachel Heide.*

And a certain other deed from *Richard Jones* to the said *G. H.*, dated 21st January, 1805, marked A., *to commence upon the death of Rachel Heide.*

The *three* commissioners appointed to allot *Rachel Heide* her life estate, allotted her the two lots conveyed by *Griffith* and *Jones*, B and C, with other property.

The three lots were comprised within the description of *lots on Cheapside.*

The bill of the appellant, *E. B.*, alleged that *G. H.* was seized and possessed among other lots, of three lots in the city of *Baltimore,* described in an exhibit filed with the bill, as A, B and C; that lot A he acquired from *Richard Jones* on 21st January, 1805; lot B from *Benjamin Griffith,* and lot C from *James Hutchings,* and that he devised the same according to his aforesaid will; that the Orphans court, on the petition of *R. H.*, on the 22d February, 1831, appointed three commissioners, &c. to lay off one-third of the real estate of the said *G. H.* to the said *R. H.*, who returned their assignment on the 11th March, 1831; that they appraised lot A at $1,800, and lot B and C at $3,000, but they erroneously designated said lots, to wit: lot A as that conveyed to said *G. H.* by *James Hutchings,* and lots B and C as lots conveyed by *Benjamin Griffith* and *Rachel Jones;* that the said commissioners erroneously assigned to said *R. H.* the lots ·A and B, but intended to assign, *as the parties interested desired,* to said *R. H.*, the lots B and C as one lot, and did not intend to assign her the lots B' and A, as by mistake has been done; that said *R. H.* since said assignment has hitherto been in possession of the houses and lots B and C, and collected the rents due therefor.

The bill further alleged, that upon the petition of the appellant and her sisters, *Caroline* and *Mary Ann,* and their husbands, the Orphans Court appointed five commissioners to allot the said estate to the three residuary legatees; that the said commissioners intended to allot the said thirds *in such manner as the parties in interest desired;* that the said *E. B.* was unwilling to take lot A at $1,800, *the valuation of the three commissioners aforesaid,* who laid off the dower of *R. H.* and refused to take it in her third at said appraisement; that the said *five* commissioners, *intending to conform as far as possible to the views of the parties,* proceeded to make their appraisement and allotment, and did thereby intend to assign, as the parties interested desired, the lot A to the said *E. B.*, and the lots B and C

to *Mary Ann Norris* as one lot, and did not intend to assign to *M. A. N.* the lots A and B, as has erroneously been done; that the said *E. B.* since said assignment, hitherto has been in possession of lot A, and collected the rents thereof.

The bill further alleged that *W. Norris, Jr.* and *M. A. N.* his wife, to secure the loan of $8,000 to *R. H.*, executed on the 29 June, 1832, a mortgage of the estate *devised, and allotted* to said *M. A. N.*, by the said five commissioners, and in said mortgage said lots *B* and *C* are erroneously mentioned as they are in said allotment, as the lots conveyed by *G.* and *J.* to *G. H.*, and are in said mortgage described as being occupied by one tenement; that on the 16 June, 1842, the said *Norris* and wife, and *Rachel Heide*, executed a mortgage to *Jacob Paul Jones* and *Israel Morris*, purporting to convey such parts of the property allotted by said *five commissioners* to said *M. A. N.* in reversion, and said *R. H.* for life, as are in said mortgage mentioned; that the said *R. H.* united in said mortgage voluntarily for the purpose of pledging her life estate, and all her other estate and interest in the property described in said mortgage to secure the said debt to *J. P. J.* and *J. M.* That the aforesaid alleged error of description, applies also to the said mortgage; that the said mortgage debt not being paid, the mortgagees obtained a decree for the sale of the property therein described; that on the 27 March, 1844, the said *J. P. J.* purchased the lots under said decree, and at which said sale, *notice of the claim of the said E. B. was publicly given;* that the said *Jones, Morris, Norris* and wife, and *Rachel Heide*, all knew it was the purpose of the said dower commissioners, and of the said five commissioners to assign said lot A to the said *E. B.*, and that the said *E. B.* was put in possession thereof when said allotment was made, and that she continued in possession thereof at the time of executing said mortgage as before. *Prayer* that the errors aforesaid may be corrected, that the said mortgage may be declared as of no effect as to lot A, that the legal title thereto may be conveyed to her by a trustee of this court, and for further and other relief, &c.

The answer of *Rachel Heide*, neither admitted nor denied

the bill; but submitted to such decree as might be passed in the premises.

The answer of *Morris vs. Jones* admitted the seizin, will, death, and sources of the title, of *G. H.* It also admitted the proceedings in the Orphans court of *Baltimore* county as they there appeared; that they have no knowledge of any error or mistake therein, or either of them; but on the contrary, are informed that although said proceedings took place in 1831, yet it does not appear that any such error or mistake, was ever suggested to said court, or that any measures were ever taken to correct said alleged error; that in the year 1842, it was proposed to give these defendants, a mortgage on certain property situate in the city of *Baltimore*, represented to belong to the said *R. H.*, and *M. A. N.*, and *W. N.*; that these defendants being then and still residents of *Philadelphia*, knowing nothing of said property employed conveyancers to examine the title to all the lots composing the property so proposed to be mortgaged to them; that on examination, it was reported to them as satisfactory and good, and in consequence thereof, the defendants agreed to accept said mortgage, and in pursuance thereof, said mortgage was drawn; that these defendants acting in perfectly good faith without any suspicion or intimation that the complainant had any pretence of claim on any of said lots and property, accepted the same and complied with all the terms and conditions to be performed on their part as set forth in said mortgage. These defendants agreed to accept said mortgage, and enter into the contract therein set forth on the faith, and under the belief, that the grantors therein had a good title and right to convey the several lots aforesaid. The answer denied notice of the alleged mistake previous to or at the time the mortgage was taken; or that *Eliza Baynard* had possession of the lot conveyed by *Richard Jones* to *G. H.*, or received the rents as charged in his bill; that they never heard of any objection to said mortgage, until the autumn of 1843, long after said mortgage was forfeited; that the defendants gave value for said mortgage as therein alleged; that they are purchasers of said conveyed lot by *Richard Jones* to *G. H.*, as

aforesaid for valuable consideration *bona fide*, and without notice of any right or claim of said complainant or any one else in said lot, except the grantors in said mortgage, who thereby conveyed all their right. The answer then admitted the filing of their bill under said mortgage; the decree for a sale; that at the sale under such decree, it is true that the complainant gave notice of her claim to said lot conveyed by *R. J.* to *G. H.;* that *J. P. J.* became the purchaser thereof, being the highest bidder therefor for account of himself and partner *J. M.*, and after ratification paid the purchase money, and the trustee conveyed to them; that there is still a large balance due them.

By the exhibit filed with the answer furnished by the defendants' conveyancer, on 21st June, 1842, it appeared that lot A fronted on *Exchange Place*, and B and C on *Cheapside.*

The defendants, *Norris* and wife, did not answer the bill. There was a decree *pro confesso* against them as non-residents.

There was proof that the legatees agreed among themselves upon a division of the residuary estate. They were three daughters of *G. H.;* the whole residuum was easily divided by the residuary legatees, until they came to lot A, or complainant's exhibit No. 1; *G. H.* had estimated said lot A at $1,800. The choice to take or reject that lot was between *Mrs. B.* and *Mrs. Ferguson.* The choice fell to *Mrs. F.*, and *Mrs. B.* finding she had to take lot A, objected to the valuation. The legatees agreed the valuation should be reduced before the award was made. The commissioners were only called on, so far as the division went, to say what lot A should be valued at, compared with the other property. Lot A was known among the residuary legatees. *Mrs. B.* agreed to take it upon condition, that it was reduced in value, and it was then awarded to her. The whole residuum was divided by the residuary legatees, and it was understood the commissioners were to follow the division made by them. The lot on *Market* and *German* streets, and lot A were the last to be divided. *Mrs. B.* was put in possession of lot A, has so continued ever since, and has drawn the rents.

The deeds from *Richard Jones*, *Benjamin Griffith*, and *James Hutchings* to *George Heide*, were also proven, and showed the errors of the commissioners in their reference to such deeds, in relation to the lots A and C. The mortgages from *Norris* and wife to *R. H.*, and from both to *Morris* and *Jones*, were also in proof.

At February term, 1846, *Baltimore* county court (LEGRAND, A. J.) delivered the following opinion:

It appears from the proceedings in this cause, that a certain *George Heide*, now deceased, being seized in fee of several lots of ground in the city of *Baltimore*, made his last will and testament on the 14th March, 1829, which said last will and testament was never revoked, but admitted to probate after the death of said *Heide*; that by said will, (after making certain appropriations of a portion of his estate,) he provided for the distribution of the residuum of it among his children, according to the award of five commissioners: the clause in the will having relation to this subject, being in these words:

" I do hereby order and direct that the same shall be done by *five* persons, who shall be disinterested, and of respectable standing, to be appointed by the Orphans court of *Baltimore* county, or any other court of record in the State of *Maryland*, of which appointment my executors, *Zebulon Cooch* and *Alexander Fridge*, if living, shall be two. And the award, decision or allotment of any *three* of them shall, when made, be returned to and recorded among the records of the Orphans court aforesaid, or among the records of *Baltimore* county court, and shall be final and conclusive, on all and each of my residuary devisees, and each of their legal representatives."

That on the petition of the heirs of *Heide*, the Orphans court appointed the commissioners, who, on the 9th June, 1831, made return of their appointment and allotment, which was recorded among the records both of the *Orphans court* and of *Baltimore* county court; that according to such appointment and allotment, *Mary Ann Norris*, (one of the children of *Heide*) had allotted and appointed to her, *two* lots of ground on *Cheapside*; one of which the aforesaid *Heide* obtained,

by deed dated 21st January, 1805, from a certain *R. Jones ;* and the other by deed dated 9th February, 1792, from a certain *B. Griffith;* that the complainant had allotted and appointed to her a lot of ground, fronting on *Franklin* lane, and running back to the lot of ground mentioned in the deed from *Griffith* to *Heide*, already referred to; that the said *Mary Ann Norris* and her husband, subsequently, on the 29th June, 1832, mortgaged the two lots of ground which had been apportioned to the said *Mary*, to *Rachel Heide*, to secure the payment of $6,000; that afterwards, on the 16th June, 1842, the said *Mary* and her husband mortgaged the same lots of ground to secure the payment of a debt due to *Israel Norris* and *Jacob Paul Jones* of *Pennsylvania ; Rachel Heide* united in said instrument for the purpose of releasing any claim as dowress she might have on said property, in favor of the mortgagees; that the debt due *Messrs. Morris* and *Jones* not being paid, the mortgage was foreclosed, and a decree passed by this court for its sale on the 27th March, 1844; that at said sale, *Jacob Paul Jones* became the purchaser of two lots, which sale was reported to this court and finally ratified.

The bill alleges, that in the allotment to *Mary Ann Norris*, by the commissioners of the lot mentioned in the deed of *Jones* to *Heide*, a mistake was committed; that instead of this lot, the one mentioned in the deed from *Hutchings* to *Heide*, should have been allotted to her; and that it was the intention of the commissioners to have done so, and their belief at the time of the apportionment that such was done; that the lot mentioned in the deed from *Jones* should have been allotted to the complainant, and that the commissioners intended to have done so; that the said complainant, believing that the last mentioned lot had been apportioned to her, received the rents and profits of the same; that at the time of the sale, her counsel gave notice of her claim to said property.

The defendants, *Morris* and *Jones*, admit the notice given at the time of sale, of complainant's claim to the lot mentioned in the deed from *Jones* to *Heide*, but deny they had any notice of such claim until long after the execution of the mortgage to

them by *Mary Ann Norris* and her husband; that the proceeds of the sale are wholly inadequate to pay the debt intended to be secured by the mortgage, and that there remains still a considerable sum due to the said *Morris* and *Jones.*

From the testimony of *Thomas Ferguson* it appears, that it was intended by the devisees, that the particular lot in question should have been allotted to the complainant, instead of to *Mrs. Norris;* and by the testimony of *Z. H. Cooch* and *Joseph Wilkins*, that there were conversations had on the subject, as to the complainant taking the lot at a less valuation than that which had been made by *Mr. Heide* in his lifetime, &c. &c.

On this state of facts, the complainant asks that this court by its decree, shall empower some trustee to convey to her the lot in question, and by the same decree to declare the mortgage executed by *Mary Ann Norris* and her husband, void and of no effect, so far as this particular lot is concerned.

Admitting that there are circumstances in the cause, which show it to have been the intention of the devisees of *George Heide*, and of the commissioners appointed in pursuance of the authority to that effect contained in his will, to have had the lot in controversy allotted to complainant, instead of to *Mrs. Norris*, the question is, how does this state of the case affect the defendants, *Morris* and *Jones?*

They were non-residents of *Maryland* at the time, and have been ever since the execution of the mortgage to them. When they agreed to receive the mortgage, they applied to an experienced conveyancer, *Mr. Spurrier*, to have the proper examination made; which, as *Mr. Nelson Spurrier* swears, was done to the best of the ability of the firm of which he was one.

*Mr. Heide* by his will had provided that the award and allotment of the commissioners, or that of any three of them, should " be final and conclusive, on all and each of my (his) residuary devisees, and each of their legal representatives." The award and allotment of the commissioners was made and returned for record on the 9th June, 1831. The mortgage from *Mary Ann Norris* and her husband, bears date 16th June, 1842, nearly eleven years after. During the whole of the intermediate

time, the records both of the Orphans court, and of the clerks of *Baltimore* county court, shew the title of the lot to be in the mortgagor, *Mrs. Norris.*

During the whole of this time, no steps were taken to have corrected any error which may have existed; but the records were there left to evidence to the world, that the commissioners having discharged the duty assigned to them, the parties interested were content with the manner in which it had been performed. With this evidence of the title being in the grantors, the defendants, *Morris* and *Jones,* accepted of the mortgage to them; without notice of any kind, as they declare in their answer, of the claim of the complainant, with the assurance of *Mr. Spurrier,* that the title was all right. Now the question is, how are these defendants situated? What is their position in the eye of a court of equity?

After a thorough examination of the leading cases on the subject, *Mr. Justice Story,* in 1 *Equity Jurisprudence,* sec. 109, thus announces the general principle by which cases of accident are governed:

" Perhaps," says he, " upon a general survey of the grounds of equitable jurisdiction in cases of accident, it will be found that they resolve themselves into the following; that the party seeking relief has a clear right, which cannot otherwise be enforced in a suitable manner; or that he will be subjected to an unjustifiable loss, without blame or misconduct on his part, or that he has a superior equity to the party from whom he seeks relief."

If it were conceded that the complainant has acted without blame on her part, yet the evidence in the cause falls far short in my judgment of shewing that she has a superior equity to the party from whom she seeks relief. But can it be successfully contended, that the complainant is not justly chargeable with negligence? If in point of fact it was the intention of the commissioners to have allotted the lot in question to her, it was her duty, growing out of her obligations to the rest of the community, to have carefully examined the award of the commissioners within a proper time, and had such errors corrected in

it as might have been the result of accident or mistake; but instead of doing this, the award and decision of the commissioners is permitted to remain of record, to deceive the public.

The latter in tracing the title to the property, would naturally have recourse to the will of *George Heide*, and by that, it would be found, the award and decision of the commissioners, was final and conclusive on the devisees of said *Heide*. This being so, how is it competent for the complainant, without ever having made an effort to correct the error in the record, if any such in point of fact existed, to have a superior equity to a third party, who, without notice of any error, acted on the faith of the public records? But it is said on the part of the complainant, that the defendants, *Morris* and *Jones*, had notice of the claim of the complainant, and this averment is sought to be sustained by the testimony of *Thomas Ferguson*, who proves that soon after the award, she was put in possession of the premises, and continued to take the rents and profits.

In answer to this view, it need but be observed that the defendants most positively deny any knowledge of the claim of complainant, until the time of the sale directed to be made by this court. But it is further urged, that inasmuch as it is proved in the bill, that complainant did receive the rent of the lot, such receipt of the rent was a circumstance sufficient in itself to put the defendants on the look out; and in support of this view, the case of *Moale vs. Buchanan*, 11 *Gill & John.* 314, is relied upon. According to my apprehension. of that case, it is wholly insufficient for the purpose for which it is invoked. The question there, as it is here, was, in whom resided the superior equity? But the facts there, were different from what they are here. There the creditors acquired a specific lien in virtue of the contract and the delivery of the possession: here there was no specific lien acquired by the complainant, her right depending entirely on the award and decision of the commissioners; and at least so far as third parties are concerned, to be ascertained only by a reference to that award which by the express language of the will under which complainant claims, is made final and conclusive on her and her legal representatives.

To this award, the defendants, *Morris* and *Jones* had recourse, and they acted in conformity with its resolutions. The defendants having procured a good title under the mortgage the question presents itself, whether the notice which was given by complainant's counsel at the time of the sale, affected the title which the purchaser then obtained?

It has long since been settled, that a party having notice, is protected in his title, provided he derives it from one who had none. "Thus," says *Story,* in his *Equity Jurisprudence,* vol. 1, sec. 409, "a purchaser with notice may protect himself, by purchasing the title of another *bona fide* purchaser for a valuable consideration without notice, for, otherwise, such *bona fide* purchaser would not enjoy the full benefit of his own unexceptionable title. Indeed, he would be deprived of the marketable value of such a title, since it would only be necessary to have public notoriety given to the existence of a prior incumbrance, and no buyer could be found, or none, except at a depreciation equal to the value of the incumbrance."

Without noticing other questions which might be considered in connection with this case, such as competency of commissioners to affect their award as against third parties by subsequent testimony on the subject, I see nothing in the cause which induces the opinion, that the equity of the complainant is superior to that of the defendants, *Morris* and *Jones,* for, to say the least, she certainly has been equally negligent with them, if any negligence can be imputable to them; and as that negligence on her part occasioned the error, if any they have committed, she cannot be entitled to relief as against them. When presented, I will sign a decree in conformity with these views.

Accordingly on the 6th day of February, 1846, *Baltimore* county court, sitting as a court of equity, decreed, that the bill of complaint be dismissed so far as respects the said defendants, *Morris* and *Jones,* and each of them, with costs. And so far as respects the said defendants, *William Norris* and *Mary Ann* his wife, the order of publication heretofore passed in this cause, having been duly published, and the said defendants

Baynard *vs.* Norris et al.—1847.

having failed to appear and answer the bill of complaint, it is decreed, that the said bill be and the same is hereby taken *pro confesso* against said defendants, *Norris* and wife. And so far as respects the defendant, *Rachel Heide*, it is decreed, that the complainant is entitled to relief as against her in the premises. And in order to enable this court to decide what relief the said complainant is entitled to as against said defendants, *Norris* and wife, and *Rachel Heide*, it is ordered that this cause, so far as relates to said defendants, be and the same is hereby referred to the auditor of this court, with directions to ascertain the value of said lots of ground and premises distinguished in the proceedings as lots A and C, and the difference of the values of the same, and also, the rents and profits which said complainant and said defendants, respectively have received from said lots respectively, or either of them, and to state an account thereof between all said parties, ascertaining and showing therein the proportion of the amount coming to complainant, which is to be paid by said *Rachel Heide*, the tenant for life, and the proportion to be paid by said *Norris* and wife, or either of them from the pleadings and proofs now in the cause and such other proofs (if any) as said parties or any of them may produce before him. And the said parties are hereby allowed to take testimony, &c.

From this decree, the complainant appealed to this court.

The cause was argued before DORSEY, CHAMBERS and MAGRUDER, J.

By McCULLOH and McMAHON for the appellants, and

By J. J. LLOYD for the appellees.

DORSEY, J., delivered the opinion of this court.

Believing that the testimony in this cause fully establishes the fact of the mistake made by the commissioners in their return, to the Orphans Court for *Baltimore* County, of the allotment by them made, under the last will and testament of *George Heide* deceased, by the assignment of lot *C* on *Franklin* lane to *Eliza*

*Baynard,* instead of lot A on *Cheapside* street; and in the assignment of lot A on *Cheapside* street, as part of the dower of *Rachel Heide,* with remainder over to *Mary Ann Norris,* instead of lot C on *Franklin* lane; the inquiry arises, are the defences set up by the answer, according to the proofs in the case, sufficient to prevent a court of equity from rectifying this mistake, and giving to the complainant the relief sought by her bill of complaint?

As a bar to such relief the defendants, *Morris* and *Jones,* assert in their answer, that they are *bona fide* mortgagees, for a valuable consideration, without notice of the claim of the appellant. In answer to this defence, the appellant insists that the allotment made by the commissioners created only an equitable estate in the real property to them respectively allotted, and that to consummate the legal title thereto in the parties to whom it was in severalty, respectively assigned, deeds of conveyance *inter se* duly executed, acknowledged and recorded, were necessary; and that to a *bona fide* purchaser of such an interest in realty, no protection is given against a prior equity. That this answer of the appellant would have been a conclusive answer to the defence set up by the appellees, *Morris* and *Jones,* could not be denied, if the fact upon which it is based had been true, viz: that by the allotment of the real estate made by the commissioners under the last will and testament of *George Heide,* the residuary legatees took nothing more than equitable estates in the portions severally assigned to them. But such was not the effect of the allotment and return thereof made by the commissioners. By it the residuary legatees took legal estates in the portions of the realty, severally, and to them respectively, assigned, under and by virtue of the last will and testament of *George Heide.*

At the present day, it cannot be doubted, that a defendant being a *bona fide* purchaser, &c., can by way of answer as effectually defend himself against a complainant, asserting a prior equitable claim, as he could by interposing the usual plea in bar founded on such a purchase. But to render such a defence available at the trial, the answer must contain an aver-

ment of every material fact requisite to sustain such a plea if demurred to. Does the answer of *Morris* and *Jones*, contain all such material averments, is, therefore the obvious inquiry to be made in this case? It does sufficiently state some of the facts indispensable to such a plea, to wit: the transfer of the legal title, the mortgage to the defendants, *Morris* and *Jones*, the *bona, fides* of the transaction, and valuable consideration paid; and the payment of this consideration before they had any notice of the claim of the appellant. But the answer has altogether omitted to state one fact, which is essential to the validity of a plea, that the defendant is a *bona fide* purchaser, &c. Wherever the estate conveyed is one to which possession is incident, and is not a mere dry remainder or reversion, it is indispensably requisite to the validity of such a plea, that it should state that the grantor or mortgagor was, at the time of the conveyance, seized, or pretended to be seized, and was possessed of the premises conveyed; as authorities for which, see *Equity Draftsman*, 449. 3 *Sugden Vendors* 345–346. *Daniels vs. Davison*, 16 *Ves.* 249. *Boone vs. Chiles*, 10 *Peters*, 211.

If to the validity of such a plea, the statement as to the possession of the grantor be essential, it is equally necessary, when such a defence is relied on at the final hearing, that a like averment, as to such possession, should be made by the answer; and had such an averment appeared in the answer of the defendants, *Morris* and *Jones*, it is conclusively disproved by the testimony in the cause. They cannot therefore protect themselves against the prior equity of the appellant, by the defence relied on in their answer, that they were *bona fide* purchasers without notice, &c. The defendants, however, must fail in protecting themselves as such *bona fide* purchasers without notice upon another ground. The fact averred in the answer (and without which the defence cannot for a moment be sustained,) is legally disproved by the testimony in the cause, which demonstrates that not only at the date of the mortgage, but for more than ten years before, the appellant had, through her tenants, been in the undisturbed possession and enjoyment of lot A, conveyed by *Jones* to *Heide* the testator.

In *Hardy & Talburt vs. Summers and wife,* 10 *Gill & Johns.* 324, this court have said that the fact of the possession of a party, whose rights are involved in a purchase, is a sufficient intimation of those rights, to put the purchaser upon an inquiry into their nature; and failing to make it, he is in equity visited with all the consequence of a knowledge of his title.

In *Graff, &c. vs. Castleman, &c.* 5 *Randolph,* 207, the Court of Appeals of *Virginia* say : thus in any purchase, if there be circumstances, which, in the exercise of common reason and prudence ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact, which that inquiry would give him.

In *Pendleton vs. Fay,* 2 *Paige,* 202, it was decided that a purchaser, whenever he has sufficient information to put him on inquiry, in equity, is considered as having notice ; and in such case he will not be deemed a *bona fide* purchaser.

For the establishment of so well settled a principle, a reference to further authorities cannot be necessary.

This court will sign a decree, reversing with costs, to the appellant, in both courts, the decree of the county court, passed in this cause, except that part thereof which decrees that the bill be taken *pro confesso* against the absent defendants, which is affirmed, and will sign the usual order remanding the cause to the county court, that a decree may be passed appointing a trustee to convey lot A to the appellant, her heirs and assigns ; and that an account may be taken of the rents and profits received by the appellees, from lot A, and the amount thus found to be due, be decreed to be paid by them to the appellant ; and that said lot C may be conveyed by said trustee to the appellees, their heirs and assigns, by way of mortgage, to be held by them, as mortgagees, in the same manner as if it had been a part of the property conveyed to them by the mortgage of *Rachel Heide,* and *William Norris* and *Mary Ann,* his wife.

**DECREE REVERSED IN PART AND CAUSE REMANDED.**