A decree will be passed, reversing and remanding the cause.

*Decree reversed and cause remanded.*

WILLIAM PRICE and JAMES H. BEVANS, *Adm's de bonis non of* WILLIAM McGUIRE, *against* JOHN McDONALD *and others.*

An equitable claim, founded on a deed not acknowledged, will be ~~enforced~~ in a court of equity, except against a *bona fide* purchaser without notice.

Information given to a purchaser, which ought to have put him on enquiry, will be considered as sufficient notice.

Notice before the purchase money is paid, will bind the party as effectually as if he had received it before the purchase was made.

ON the first day of November 1808, John McDonald conveyed lands in Allegany county to a certain Henry Dangerfield, in trust to sell said land, and with the proceeds of sale, pay a debt of $453.85, then due from said McDonald to William McGuire, with interest thereon from 7th January 1808, if the same remained unpaid. On the 21st November 1811, Dangerfield died, without having executed this trust, and this bill was filed on the 5th September 1817, in Alle-

gany county court, sitting as a court of equity, asking the appointment of a trustee to make sale of the premises for the payment of the debt.

The deed is signed and sealed by McDonald, McGuire and Dangerfield. It was recorded in the land records of Allegany county, but was never properly acknowledged, though all the parties acknowledged it to be their deed before Bently Carson, mayor of the corporation of Winchester, with a certificate of a person who styled himself the clerk of said corporation, that said Carson was mayor. It is stated in the record immediately after the deed of trust, that the moneys are for the benefit of Fleet Smith, to whom it had been transferred by McGuire. Deed exhibited.

Bill was filed by McGuire.

On the 24th November 1819, McDonald filed his answer, wherein he states, that at the time of executing the deed, he believes he did not owe the complainant any thing. They were securities for one Anges McDonald, and McGuire presented an account of moneys which he alleged that he had paid as security, and the respondent confiding in his honesty executed the deed, but McGuire has since acknowledged to respondent that he had received money and goods of the principal debtor, sufficient to reimburse him.

The bill of complaint was filed by McGuire against McDonald. McGuire afterwards dying, a bill was filed on the 16th April 1823, by William Naylor, administrator of McGuire, to revive the proceedings, and also charging that a sale and conveyance had been made of the premises by George Bruce, sheriff of the county, and the said McDonald to one John Folck, (deeds therefor exhibited,) and also that Andrew Bruce, since Sheriff, had sold the lands to one William Harness, the conveyance to whom was exhibited. This bill makes John Folck, William Harness, Andrew Bruce and George Bruce defendants. By an amendment of it, there was a charge that Folck and Harness purchased the land with full knowledge of McGuire's lien and claim.

To this bill, McDonald filed an answer 19th October 1825,

in which, besides repeating that he did not believe that he owed McGuire anything, he stated, that on the day of the sale, he informed said Folck of the deed of trust, and before the sale took place; that afterwards at the house of the defendant, Folck speaking of said deed of trust, said, if they sued him, he would see them out.

Folck in his answer, stated that he had no personal knowledge of the said deed of trust. He admits that he heard some person or persons, (does not recollect who they were,) speak of the existence of said deed of trust before his purchase from Bruce, but does not recollect ever to have taken counsel about the effect of said deed of trust before he made the purchase. He had no knowledge of the existence of any such deed before his purchase, except that collected from the conversation above mentioned. He never saw the deed before said purchase. He purchased the land at the instance of said McDonald, and one George M. Swann, and before he made the purchase, he enquired of the sheriff whether there was any such deed of trust, and was informed by him that he knew nothing about it. He denies that McDonald at any time before the purchase, disclosed the existence of any such deed of trust, but admits, that shortly after the sale to him, and before the purchase money was paid by him, McDonald did inform him of the existence of such a deed, but at the same time assured him that the money secured by the said deed was fully paid, and that there was no claim against the land purchased by him, for any money due and unpaid under said deed.

Folck afterwards died, and John Folck and Daniel Folck were appointed his administrators. Then Naylor the administrator of McGuire, died, and the appellants were appointed the administrators *de bonis non* of McGuire, and by bills of revivor they were made the complainants, and the heirs as well as the administrators of Folck, (the original defendant,) became defendants in the suit.

It was afterwards admitted, that the land purchased by Harness at the sheriff's sale, is no part of the land included in the

deed of trust. It was further admitted, that the deed from McDonald to Folck, was merely to confirm the sale made by the sheriff.

General replication, and commission to take testimony was issued. Proof was taken of the execution of the instrument called a deed of trust, and of this proof the court said it is quite sufficient. There is no proof of notice to Folck, except that to be found in the answers. The acknowledgment of the deed of trust being defective, it is to be considered in every respect as if it had never been recorded.

The court below dismissed the bill, assigning the following reasons for the decree :

It is manifest, that as the paper of the 21st of November 1808, was not acknowledged, in conformity with the provisions of the act of Assembly, of 1715, ch. 47, it can have no effect or operation as a deed. This has not been controverted by the counsel for the complainant. But the execution of the paper is, I think sufficiently proved, and the proposition of the counsel for the complainant is, that although this paper cannot operate *qua* a deed, yet that upon the authority of the cases of *Tiernan vs. Poor*, 1 *Gill and John.*, 27, *Alexander vs. Ghiselin*, 5 *Gill* 140, it is to be considered as evidence of a contract, which a court of equity is competent to enforce. If this was a controversy between the original parties to the instrument, there would be great force in the proposition. But I am satisfied from an examination of the authorities upon this subject, that a purchaser for a valuable consideration, cannot be affected by an equity of this kind, unless it is affirmatively and clearly shown by the complainant, that he purchased with actual notice, of the terms and character of the contract proposed to be enforced. A purchaser in this predicament would be treated in a court of equity, as affected by the contract between the original parties, solely upon the ground of fraud. Is there then to be found in this case, any evidence that Folck became the purchaser of the property in contest, with knowledge of the contract contained in the deed, of the 21st of November 1808? I think not.

The only evidence on the subject of notice, is drawn from the answer responding to the allegations in the bill, and the defendant denies distinctly and positively, that he had any notice of the deed of trust, prior to his purchase at the sheriff's sale. It is true, that in reply to an allegation in the bill, he admits that he was informed, that a deed of this kind existed, before he paid the purchase money, but in the same sentence he asserts, that at the time he received information that a deed of trust existed, he was informed that nothing was due upon it. This part of the answer is responsive to the bill. It is to be received in its entirety; that is, you cannot use that portion of the answer to this interrogatory, which operates against the defendant, and reject that part which operates in his favor, contained as it is in the same sentence, and relating to the same subject. The whole answer to this question as propounded by the bill is to be taken together, *Ormund vs. Huchinson*, 13 *Ves.*, 157, and it amounts to a declaration, that at the time the defendant paid his purchase money, he had no reason to believe, that there existed between the original parties an unsatisfied contract, which it is the purpose of this bill to execute. Is there then to be seen in the case any evidence, proving that the defendant became the purchaser of this property, with actual notice that at the time he purchased, a bill of complaint was pending in Allegany county court, by McGuire against McDonald, to enforce the execution of this agreement? To this enquiry the answer must be also in the negative. It was contended by the counsel for the complainant, that as the defendant answered with respect to the deed of trust, but was silent as to the *pendens*, he must be regarded as having admitted his knowledge of the pending suit. This position however, cannot, I think, be maintained. If a defendant does not answer fully and fairly without equivocation or mystery, the course is to except to the answer; but in Maryland a defendant is not considered as admitting the truth of the allegations of the bill, which he does not deny, when the cause is before the court, upon final hearing, *Warfield vs. Gambill*, *Gill and John.*, 510. The rule is different, upon a motion to dissolve an injunction upon bill and answer.

The defendant is, however, to be considered, as having denied knowledge of the pendency of the suit, and the object for which it was instituted; the terms and character of the agreement, upon which it was founded. For he denies that he had knowledge of the deed of trust, at the period of the purchase, and this involves, necessarily, a denial of knowledge with respect to the character and object of the controversy, between McGuire and McDonald, or the bill of the 5th of September 1817.

It is then, in my opinion, very clear, that the defendant was without actual notice of this contract. Is he to be affected by the equity supposed to exist between the original parties, arising from a paper so imperfect as this, upon that constructive notice, which results from a *lis pendens*? I think not. The doctrine, announced by Sir William Grant, in *Wyatt vs. Barwell*, 19 *Ves.*, 435, I consider as conclusive upon this. 1 *Story*, 406. The remaining question is, whether the defendant can be regarded, upon the pleadings in this case, as occupying the position of a *bona fide* purchaser, for valuable consideration, without notice? It is a familiar principle in the practice of the equity courts, that a defendant cannot stand upon the defence, that he is a purchaser, without notice, unless he makes this averment, and brings out this point in his answer. But I think it has been accomplished in this case. For although the pleadings have been most imperfectly prepared, I understand the bill as alleging, that the defendant was a purchaser of this property, with notice; and the defendant, as having substantially averred, in answer to his allegation, that he was a purchaser, for valuable consideration, and without notice. Upon these grounds, I think, the bill must be dismissed. It is unnecessary to express any opinion with respect to several of the points raised by the counsel, in the argument of the cause, and very ably and elaborately discussed. It is thereupon, this 16th of May 1850, adjudged, ordered and decreed, that the bill in this case be, and the same is hereby dismissed, with costs.

R. N. MARTIN.

From this decree the appeal was prayed.

This case was argued before Le Grand, C. J., Eccleston and Tuck, J.

By *Price* for appellants, and *McKaig* for the appellee.

*Price* for the appellant.

The defence, that Folck was a purchaser for a valuable consideration, is not made in this case. Having omitted to protect himself by the usual plea of a *bona fide* purchaser for value, and having submitted to answer, Folck must answer fully, and must aver every material fact necessary to sustain such a plea if demurred to. The averments essential to such a plea are all of them omitted in the answer. It omits the averment that he is a *bona fide* purchaser, for valuable consideration, without notice. It omits the averment, that McDonald was in possession at the time of the purchase of the land. It omits the averment, that the money was all paid before he had notice. Having omitted to set up the defence of a *bona fide* purchaser, for value without notice, that is not in issue. *Bayard vs. Norris and others,* 5 *Gill,* 468. 71 *L. L.* 77, 78, 95. 23 *Condensed Eng. Ch. Rep.,* 43.

The answer does not set up want of notice. "No personal knowledge of the execution of the deed." It admits he had "heard some persons speak of the deed before he bought."

Folcke does not state that he bought the *legal* title. See *2nd Story's Equity, sec.* 1502.

*White and Tudor's Cases,* in 71 *L. L.,* 77, &c. Notice must be positively denied. See 1*st Sumners Reports,* 506. 4*th Russell,* 514. 3 *Eng. Ch. Reports,* 774, *Jackson vs. Rowe.*

A person at a sheriff's sale is not within the protection given to *bona fide* purchasers, for a valuable consideration, without notice. *Sasscer vs. Young,* 3 *G. & J.,* 249. *Richardson vs. Stillinger,* 12 *G. & J.,* 483. *Dudley vs. Cole,* 1 *Dev. and Batt.,* 436. *Simmons vs. Tillery,* 1 *Term Rep.,* 275.

He buys subject to all the equities resting on the defendant, and to such a purchase the maxim applies, *Caveat emptor.* In

his answer he states, that he bought all the right, title, &c., of McDonald.

As to affecting creditors by an unrecorded deed, see 5 *Gill*, 180, 181, *Alexander vs. Ghiselin.*

This case must be regarded, as if it were now pending between McGuire and McDonald, in which case the right of the complainant to a decree for the sale of the property, would be free from all difficulty. *Turner vs. Poor*, 1 *G. & J.*, 227; and 5 *Gill*, 138.

Folck had notice: see his answers; and see 23 *Eng. Con. Ch. Rep.*, 43, *Jones vs. Smith*, as to notice. Answer admits constructive notice. Information which would lead a man to enquire, is notice. 71 *L. L.*, 132, 133, 144, 145.

*McKaig* for appellees.

The suit having abated by the death of the complainant, there was no suit pending at the time of the sale, and of course, no notice.

In order to affect Folck as the purchaser at a sheriff's sale, actual notice was required, and the mere, "*lis pendens*," was not sufficient. Mere vague report from strangers, or mere general assertions, that some other person claims a title, is not sufficient to charge a purchaser with actual notice. 71 *Law Lib.*, 132, 145, 148, 154, 166. *Jolland vs. Stainbridge*, 3 *Vez.*, 478. *Frey vs. Potter*, 1 *Mod.*, 300. *Bulcher vs. Stapley*, 1 *Verm.*, 363. *Wyatt vs. Barnwell*, 19 *Vez.*, 439.

Constructive notice is not sufficient, and the mere "*lis pendens*," if it actually existed, is not sufficient. 71 *L. L.*, 132, 133, 137, 143, 166.

Folck says he had no knowledge of the deed, except from rumor, before his purchase, and this is a denial of all knowledge of the "*lis pendens*."

If answer neither denies nor admits a statement in the bill, the allegations must be proved. 1 *G. & J.*, 510, *Warfield vs. Gambrill.*

The complainant cannot place himself in a better condition than he would have been in, had he filed a bill to have the

deed recorded, as authorised by the act of 1785, ch. 72. This debt, as the record shows, was contracted before the bill was filed. If the deed therefore had been admitted to record by the chancellor, it would have been postponed to the judgment under which the land was sold.

The complainant attempted to avoid the effect of the act of 1785, by filing his bill for a sale, instead of applying to have his deed recorded.

The act of 1825, chap. 203, provides that the deed first recorded shall have a preference. This deed never was recorded: the deed of the sheriff was.

2 *G. & J.*, 446, 454: A purchaser at a sheriff's sale was protected against an unrecorded deed.

The courts in this State ought not to extend the doctrine of constructive notice; the registration of deeds is provided for.

*Price* in conclusion.

The act of 1825, ch. 203, does not include this deed.

In 1 *G. & J., Tiernan vs. Poor,* the court decreed a sale, without first decreeing that the deed be recorded.

Whether notice is charged in the bill or not, the defence must be distinctly set out. 71 *Law Lib.,* 92, 93.

Eccleston, J., delivered the opinion of the court.

The instrument on which this suit is founded, bears date the 21st of November 1808, and was executed as a deed of trust, or mortgage, for the purpose of conveying certain lands to Henry Dangerfield, by John McDonald, in trust, to secure the payment of the sum of $453.85, to William McGuire; giving the trustee, power to sell the land and pay the claim, provided it should not be paid, on or before the 21st of November 1811. On the 5th of September 1817, after the decease of Henry Dangerfield, the original bill was filed, praying for the appointment of a new trustee, and for the sale of the land, to pay the claim.

In the original bill, Wm. McGuire was complainant, and John McDonald, the only defendant. On the 16th of April

1823, after the decease of Wm. McGuire, his administrator, Wm. Naylor, filed a bill of revivor; in which it was stated, that the intesest of John McDonald, in the land, included in the deed of trust, had been sold by George Bruce, as sheriff of the county, and by McDonald to John Folck; and that Andrew Bruce as sheriff, had sold the same land to William Harness. The said John Folck, William Harness, George Bruce and Andrew Bruce, were made parties.

In April 1825, an amended bill was filed, alleging that John Folck, had knowledge of the deed of trust; that he was told of it by John McDonald, and that he consulted an attorney at law, about the deed. That he purchased the land, from the sheriff, after taking advice in regard to the deed. That after the land was struck off to him, and before he paid for it, he was informed, that such a paper, purporting to be a deed of trust, existed. Notwithstanding which information, he paid the money, and took a deed from the sheriff, subject to the claim of Wm. McGuire. And that the circumstances of the deed of trust, were known to Folck and the sheriff, before Folck bought the land.

In the argument, it was admitted by the solicitor for the appellants, that he must abandon all claim, to any benefit from the *lis pendens*, in consequence of the exceedingly dilatory manner in which this case was conducted. It is therefore unnecessary to make any reference to what is said in the amended bill, or in the answers, in relation to a knowledge on the part of Folck, as to the pendency of this suit, at the time of his purchase.

By an agreement filed, it is admitted, that the land sold to Harness, is no part of the land, included in the deed of trust; and his answer is not sent up in the record.

On the 24th April 1827, John Folck filed his answer. In which he alleges that he had no personal knowledge of the execution of the deed of trust from John McDonald to Henry Dangerfield, mentioned in the bill. He admits that he purchased all the right, title and interest of John McDonald, in and to a tract of land at sheriff's sale, which land he believes

to be the same land conveyed by deed from McDonald to Dangerfield. He admits also that he had heard some person or persons, whose names he does not recollect, speak of the existence of this deed of trust before his purchase; but he asserts that he has no recollection of his ever having taken counsel about the effect and operation of the deed of trust, prior to the sale; and that he had no knowledge of the existence of the deed before his purchase, except that collected from the conversation above mentioned. He states, that on day of the sale of McDonald's interest in the land he purchased the same, at the instance of McDonald and George M. Swann; that on the same day, and just prior to the sale, he, (Folck,) enquired of Bruce, the sheriff, if any such deed of trust from McDonald to Dangerfield did exist, and Bruce informed him that he had no knowledge of any such deed; that then the land was offered for sale, and he (Folck,) became the purchaser. He denies that John McDonald ever did, at any time before the sale of the land, disclose the existence of any such deed of trust; but admits, that shortly after the sale, and before the payment of the purchase money, John McDonald did inform him of the existence of such a deed. He states, however, that at the same time, McDonald assured him that the money secured by such deed of trust was fully paid, and that there was no claim against the land for any money due and unpaid under said deed of trust.

The agreement of counsel shews that the deed from McDonald to Folck, which is referred to in the bill of revivor, was executed as confirmation of the sheriff's deed.

After the decease of Wm. Naylor, the appellants, as administrators *de bonis non* of Wm McGuire, were made parties complainants, on the 7th of March 1848.

On the 19th of April 1830, John Folck filed a further answer,, which is very much the same as the one already mentioned. John Folck died in January 1841, and his administrators and heirs at law were made parties defendants.

The heirs at law of Henry Dangerfield were also made parties.

As the decision of the case must rest almost exclusively upon the bills, the answer of John Folck, and the proof in regard to the execution of the instrument, (which by common consent has been called *the deed of trust*,) it is unnecessary to notice the other answers in the cause.

The proof offered to establish the execution of the deed of trust is quite sufficient. This was not denied by the solicitor for the defendants. But it was conceded by the counsel on both sides, that the acknowledgment was defective ; and that although the instrument had been actually recorded among the land records of the county, it must be considered in every respect, as if it never had been put upon record.

Two principal objections were urged against this claim. The 1st, that the deed is defective, because it was not acknowledged and recorded according to the provisions of our registry laws ; and even in a court of equity the complainants can have no relief as against the defendants, except upon the principle recognized in the act of 1785, ch. 72, sec. 11. And as the purchase by Folck was, since the deed, and the original cause of action, on which the judgment was rendered, under which the sale was made to Folck, came into existence after the deed of trust, his title under the sheriff's deed cannot be affected by the claim of the complainants.

The second objection is, that if the deed of trust is not rendered nugatory upon the grounds taken in the first, it still cannot avail the complainants, because Folck was a *bona fide* purchaser for valuable consideration, without notice.

It is very true that our registry laws would seem strongly to sustain the position assumed in the first objection. But whatever weight it might have been entitled to formerly, it is now too late to be relied upon as a ground of defence. The decisions in England, in the different States of the Union, and in our own State, are too numerous and too pointed in the opposite direction to require an argument, to shew, that an equitable claim, like the one under the present deed of trust, will be enforced in a court of equity, except against a *bona fide* purchaser without notice. See 2 *White and Tudor's*

*Equi. Ca.*, in 71 *L. L.*, *top-p.*, 163, in notes to the case of *Le Neve vs. Le Neve.* 2 *H. & G.*, 415, *Hudson vs. Warner and Vance.* 1 *G. & J.*, 216, *Tiernan vs. Poor, et ux.* 5 *Gill*, 180, *Alexander, et al, vs. Ghiselin.* 5 *Gill*, 468, *Baynard vs. Norris, et al.* 5 *Gill*, 59, *Wilson vs. Turpin.*

The second objection is one of more difficulty, and will require some examination. It involves the question whether Folck had notice of the prior equity of McGuire. On this subject, the authorities are not uniform, and especially in regard to the precise point arising in this case, which is, whether information given to a purchaser, which ought to put him on inquiry, will, in equity, be considered sufficient notice? The decisions in some of the States have held, that to set up an outstanding prior equity against a recorded deed, constructive notice would not avail, but actual notice clearly proved, would be required. The Supreme Court of the United States, however, have said in *Vattier vs. Hinde*, 7 *Peters*, 271 : "Vattier's original purchase then, cannot avail him, because he was bound to notice the equity of Doyle. But there is, we think, much reason to believe, that he had actual notice of that equity, or at any rate, was informed of circumstances which ought to have led to such inquiry as would have obtained full notice." And this is the language of Chief Justice Marshall. The same principle is fully recognised in *Graff, &c., vs. Castleman, &c.*, 5 *Randolph*, 207. *Pendleton vs. Fay*, 2 *Paige*, 202, and *Hardy and Talburt vs. Summers and Wife*, 10 *G. & J.*, 324. The three last cases are cited in *Baynard vs. Norris, et al.*, 5 *Gill*, 483.

And immediately following the reference to those cases, the Court of Appeals manifest their decided approval of them, by saying : "For the establishment of so well settled a principle, a reference to further authorities cannot be necessary." Although this species of notice may be opposed by the decisions of distinguished judges in some of the States, we do not feel authorised to go in opposition to the Supreme Court of the United States and our own express adjudications.

The complainants having offered no proof on the subject

of notice, we must look to the answer of Folck, to ascertain whether it contains any thing which will supply the want of evidence on the part of the complainants. We there find it admitted, that after the sale, but before payment of the purchase money, Folck was informed of the existence of the deed of trust by McDonald, but immediately following that information, McDonald declared, that the money intended to be secured by the deed had been fully paid. Here there is positive and actual notice as to the existence of the deed. Did the accompanying information as to the payment of the money, release Folck from the necessity of making further enquiry in relation to the truth of that matter? is the important question.

Can it be supposed, that a man of ordinary prudence would have made the purchase, under the circumstances, without obtaining more satisfactory information as to the payment of the money? The man by whom he was informed of the payment, was, of all others, most likely to be tempted to misrepresent. The fact of his land being sold under execution, is evidence of his embarrassed condition, and, of course, of the improbability of his having paid or discharged the incumbrance, intended to have been created by the deed. His situation rendered it highly important that the land should bring as much as possible at the sale. And he was urging Folck to purchase, as the answer shews. There is not a word about having any receipts for the money, nor is there any excuse or reason assigned for not having them.

In *Jones vs. Smith*, 1 *Phillips*, 244, in 19 *Eng. Ch. R.*, T. Smith, the intestate of the defendant, lent David Jones, the father of the plaintiff, a sum of money, and took a mortgage for the same on Jones' land. Whilst the treaty for this loan was going on, David Jones informed Smith that there had been a marriage settlement, which included his wife's estate, but not his own.

This assertion, both Jones and his wife offered to verify, by swearing to it, if necessary. And when Smith asked to see the settlement, Jones told him that it was in the posses-

sion of his wife's brother, and he was afraid he could not get it without displeasing his aunt, who was a rich old lady.

The lord chancellor held, that this evidence did not constitute notice to the mortgagee. He considered the question before him to be, whether, where a party is informed of the existence of a deed, which may, but does not necessarily affect the property about to be mortgaged, and it is stated at the time that the property is not affected by the instrument, but that it relates to some other property, whether, acting fairly and honestly, he believes the statement is true, but he is misled, and, in reality, the instrument does relate to the property, he is to be considered as having notice of the contents of the instrument? On this point he says: "Undoubtedly, where a party has notice of a deed, which, from the nature of it, must affect the property, or is told at the time that it does affect it, he is considered to have notice of the contents of that deed, and of all other deeds to which it refers; but where a party has notice of a deed which does not necessarily—which may or may not—affect the property, and is told, that in fact it does not affect it, but relates to some other property, and the party acts fairly in the transaction, and believes the representation to be true, there is no decision that goes the length of saying that if he is misled, he is fixed with notice of the instrument."

This case was first decided by Sir J. Wigram, V. C., 1 *Hare*, 43. His opinion, like that of the lord chancellor, was in favor of the defendant on the point of notice. His decision is based upon the ground, that a marriage settlement does not of necessity include the husband's estate, and that information of a settlement, accompanied by an assurance, from husband and wife, that the husband's estate is not affected by it, does not impose upon a purchaser the obligation to make further enquiry, so that his failure to do so will fix upon him constructive notice of the true character of the settlement, if, in fact, the husband's estate is included. He thinks if this would be notice, it might, with equal propriety, be said, that the marriage itself, should be sufficient to create the necessity

53    v. 1

of enquiring whether there is not a settlement. And if so, then if a man deals with his neighbor, without knowing he is married, the vice chancellor seems to think, that a purchaser should, upon the same principle, be affected with notice of his marriage, and thence with notice of the marriage settlement, (if any,) and thence with notice of the contents of the settlement. Thus it will be seen that this case, in the very point on which it turned, was essentially unlike the one before us. Here the information was of a deed, which the purchaser was informed, included the very land about to be sold to him.

In *Whitbread vs. Jordan, Coote's Law of Mortgage,* 375, in 69 *L. L.,* Boulnoes, one of the defendants, received from Jordan, the other defendant, a legal mortgage of copyholds, to secure a former debt, and a fresh advance. At the time, Boulnoes knew, that Jordan was indebted to the plaintiffs, who were brewers, and that it was their practice, to take a deposit of title deeds, to secure the money due to them. Boulnoes, enquired, whether there had been such a deposit, and was informed, there had not, but was assured, "that the plaintiffs had taken a note of hand merely, and that the property was unincumbered." He was also informed by Jordan, that the copies of court were absent, because he had lost, or mislaid them. Boulnoes was held bound, in consequence of his not having enquired of the plaintiffs.

This case, Coote says, has been questioned, and refers to *Sug. on Ven.,* 1054, 11*th* ed. However, he proceeds to remark: "But the decision was approved by Lord Lyndhurst, on the hearing of the case of *Jones vs. Smith,* on appeal." In commenting upon *Whitbread vs. Jordan,* the lord chancellor evidently approves of the conclusion of the learned judge, who, in deciding the case, said, that "the facts of the case were such, as to amount to negligence of so gross a nature, that it would be a cloak to fraud, if it were permitted." 19 *Eng. Ch. R.,* 255.

We do not design, either to affirm or deny the principle, involved in the point of this case, arising from the habit of

the brewers. It has been referred to, for the purpose of shewing the extent to which the English courts have gone, on the subject of constructive notice, in consequence of a failure to make proper enquiry. This case, and the reasoning of the lord chancellor, in *Jones vs. Smith*, we think, establish the principle, that if a party has knowledge of the existence of an instrument, which, actually, does affect the land, but not being one of such a character, that there may be some doubt, whether the land is included or not, he will be charged with full notice of the instrument, in regard to its contents and effect, if he fails to make suitable enquiry. And that although the party, whose interest would prompt him to misrepresent, should assert that the incumbrance was paid off, or discharged, without furnishing any proof whatever, or referring to any circumstances in support of his assertion, the purchaser or mortgagee, who fails to make further enquiry, will, nevertheless, be guilty of such a degree of negligence, that he will be considered as having notice.

The principle here advanced is very fully sustained, in the case of *Hudson vs. Warner and Vance*, 2 *H. & G.*, 415. There W. Warner and W. Vance obtained from J. and T. Vance a mortgage on personal property, which they neglected to have recorded. Afterwards a mortgage was given upon the same property, or a part thereof, to Hudson & Co., which was recorded immediately upon its exection. The suit was instituted to enforce the first mortgage, upon the ground of notice, to the second mortgagees, which was expressly charged in the bill. The answer of Hudson denied, that when he received the bill of sale, he had any notice of any prior, legal or equitable incumbrance upon the property, in favor of the complainant, or either of them. He also alleged that he had no notice of any delivery or pretended delivery to the complainants, or either of them, or to any person on their account; except only the book of accounts of the firm of J. and T. Vance, and other evidence of debts due the firm, which were referred to in the defendant's bill of sale, as being in the possession of W. Warner, and which T. Vance represented to the defend-

ant, amounted to $40,000 and upwards, and as being more than enough to satisfy all the debts of the firm: but that the books and evidences of debts, were then unjustly withheld from him (the said Vance,) by W. Warner. The answer also asserts, that previous to the execution of the second bill of sale, the defendant (H. Hudson,) inquired of T. Vance, whether there were any outstanding incumbrances on the property, "and was informed by him, that endorsements had heretofore been made by Warner for J. and T. Vance, and a contract given to him, accompanied with a bill of sale upon some part of their property, but what part he did not state, but said that Warner had never been called upon to pay any of the notes of J. and T. Vance, and that the security which had thus been given to him, and the said pretended bill of sale, were of no avail, and had not been recorded, but were null, fraudulent and void." The defendant further stated that Vance asserted there was no valuable consideration for the first bill of sale: that it "could not impair the security he then proposed to give to the defendant, even as to the books of accounts and securities then in the hands and possession of Warner, and much less incumber in any way, the books and stationery then in the store No. 178, Market street, and the rooms and warehouses adjacent thereto; which he then agreed to transfer to the defendant, by the bill of sale as aforesaid, and whereof the said Vance then appeared and represented himself to be in the sole and exclusive possession for and on account of the firm of J. and T. Vance." And the defendant asserted, positively, that he believed the information so given to him by Vance.

The court held Hudson bound by the notice, notwithstanding the positive statement in the answer, as to his belief of the truth of the information given to him by Vance: which information was in express terms, that no advances or payment had been made upon the endorsements, which were the foundation of the first bill of sale; that the instrument was without consideration; that it was not binding even upon the book of accounts, and other evidences of debt mentioned in the second

bill of sale ; and especially, that it was no incumbrance upon the books and stationery then in the possession of Vance, and intended to be transferred to the defendant.   Indeed the court, in their opinion, consider the answer as alleging, that the defendant was informed "that nothing was due upon the conveyance."   But they ask the important question, from whom did he derive this information ?   And they answer it by saying : "from his creditor," (which should be, debtor,) "who was then pressed to give him security for his debt. Ought he to have confided in such an interested representation from one, whom, common sagacity might have admonished, would, very naturally, be inclined to rid himself of the pressing solicitations of importunate creditors, by the most favorable representations, of the unincumbered and unshackled condition of his estate ?"   It is perfectly evident that the court considered Hudson guilty of great negligence, and by no means excused from the obligation of making further enquiry, in consequence of the information he received from Vance.   They say, on this point, " If Hudson could have supported by testimony, what he has set up in avoidance of this notice, his claim would have been presented in a very different view before this court.   Could he have established the fact, that he had made the enquiry of *Warner*, into the nature of his claim and lien, and had been led by *Warner* to believe, that his incumbrances were removed, equity would never interpose to invalidate his claim.   But these facts were necessary to have been established, as they constituted the only effective part of his defence, and it is scarcely necessary to say, that his answer can furnish no evidence of these facts."

It has, however, been said, that the bill in the present case charges notice, and that the answer in that respect is responsive to the bill, and must be considered as true.   And that, therefore, the admission of notice must be taken in connection with the statement, of the simultaneous information, as to the discharge or payment of the claim under the deed of trust, which released Folck from the necessity of enquiring further into the matter.

It will be seen that the bill, in the case of *Hudson vs. Warner and Vance*, charged notice. The answer, therefore, was as much responsive on that point, as in the case before us. The court, nevertheless, relied upon the answer as admitting notice, to the defendant, before the bill of sale was given to him, that *Warner* and *Vance* had received a conveyance. And yet they did not, upon the allegation of a defensive character in the answer, consider the defendant relieved from the obligation to make enquiry. It is true, the court do not rely exclusively upon the admission in the answer as proof of notice, but they lay much stress on that admission. Their language, on page 429, is, "The answer distinctly admits the notice." And on page 430, they speak of the answer, in connection with other matters, as leading irresistibly to the conclusion, that Hudson had such notice as would affect his conscience, and that there existed some pre-existing equity.

A refusal to permit the answer of Folck to excuse him, for not having made further enquiry, does not, at all, violate the rule, which requires that the statements in an answer, responsive to the bill, are to be received as true. We concede it to be true, as stated, that McDonald did inform Folck that the money secured by the deed of trust, was fully paid, and that there was no claim against the land for any money due and unpaid under said deed. But admitting that he was so informed, he was not justified in relying upon such information, coming from such a source. And failing to make proper enquiry, he was guilty of negligence to a degree, which must charge him with notice of the lien and of its continuing existence; especially as he was informed that the deed was designed to create an incumbrance upon the very land he was about to purchase; and the information he received, as to the discharge of that incumbrance, rested solely upon the naked assertion of McDonald, unsupported, by a particle of evidence or any circumstance whatever, or even an allusion to any.

Notice prior to payment of the purchase money, will bind a party, as effectually as if he had received it before his pur-

chase.  2 *White and Tudor's Eq. Cases*, in 71 *Law. Lib.*, top-paging, 77, 78, *and* 116.

This view of the subject being sufficient to decide the case, we refrain from saying any thing in regard to the other points presented in argument.

The decree of the county court must be reversed and the cause remanded, with instruction to the circuit court for Allegany county, to pass a decree allowing the claim of the complainants, appointing a trustee for the sale of the land mentioned in the proceedings, so that the proceeds thereof may be applied to the discharge of said claim, so far as the proceeds may be requisite for that purpose, and also to the payment of the costs : provided the claim with the costs shall not be paid or brought into court, within a reasonable time, to be set forth in such decree.   And this court will sign a decree in accordance with these principles.

*Decree reversed and cause remanded.*