Christian, J.,
delivered the opinion of the court.
On the 9th day of October, in the year 1857, a paper purporting to be the last will and testament of Celia Shearman, a married woman, the wife of Thomas Shear-man, was duly admitted to probate in the County court of Fauquier county. The validity of this paper, as a will, was contested by the heirs at law of the said Celia Sherman, by a bill in chancery, filed by them in the Circuit court of Fauquier. Upon an issue devisasit velnon, directed in that suit, the jury found a special verdict, in which they find that the paper writing, purporting to be the last will and testament of Celia Sherman, and proved as such before the County court of Fauquier county, at its October term, 1851, is in the proper handwriting of the said Celia Shearman; that she executed said writing at the date thereof, but not in the presence of any witnesses; and that she was, at the time of executing the paper, a feme covert, and so continued until the time of her death.” They also set .out in their said special verdict, certain deeds, one of which is a deed in which one John Timberlake conveys to Thomas Sherman and Celia Shearman, his wife, certain real estate, and which contains the following provision: “And the said Thomas Sherman doth hereby covenant and agree to and with the said Jno. Timberlake and Celia Shear-man, that she, the said Celia Sherman, shall have the privilege, whether she chooses to execute it during the coverture or not, to nominate by last will- and testament, or power of appointment in the presence of two witnesses, such person or persons as she may designate, for her heir or heirs to the property aforesaid, after the death of the said Thomas Sherman.” .. . .
*202 Upon this special verdict.the Circuit court, being of opinion “that the presence of two witnesses wa3 as imperative in the case of a will as -in the exercise of the power of appointment,” held that the law was with the plaintiffs; and' accordingly entered its decree, declaring that the paper writing which had been admitted to probate, was not the true last will and testament of the said-Celia Shearman, and that the same was void and of no effect, and that the probate.thereof be set aside and annulled. On an appeal to this court, this decree of the Circuit court of Fauquier was reversed. In that case, which is in the name and style of “ Shearman's adm'r & al. v. Hicks & als., and reported in 14 Gratt. 96, this court held that the deed from Timberlake to Shearman and wife above referred to, conferred on the wife a valid power of appointment, and that the power was well ex-. ecuted by her olograph will. Judge Samuels, delivering the opinion of the majority of the court, concludes by saying “ that Mrs. Shearman’s will passed the title tor the land over which she had a power, and in which she-had a fee simple estate; and that, the sentence of the.Circuit court, revoking the probate of the whole will, is. erroneous as to the land conveyed by Timberlake, and. should be reversed, and the probate of the will as to that subject be held valid and binding.”
. This court then proceeding to pronounce such decree-as the Circuit court of Fauquier ought to have pronounced, decreed and ordered that the probate of so-much of Celia Shearman’s alleged will as is in these-words: “I, Celia Shearman, of the. county of Fauquier and State of Virginia, being of sound mind and dispos-, ing memory, praised be to God, and knowing the uncertainty of this life, do make, ordain, publish and declare this my last will and testament, in manner following, to wit: I give and bequeath, to Kimble G. Hicks, jr., son *203 of Kimble GL Hicks, sr.. after the decease of my hus- ’ , band, Thomas, Shearman, the plantation he now holds; and lastly, I hereby constitute and appoint my beloved , , ,J . , , husband, Thomas Shearman, executor to this my last will and testament. In testimony whereof,” &c. Signed “ Celia Shearman, [seal,]” be held good and valid in law; and that “so much of the bill as seeks a revocation thereof be dismissed,” &c. &c. The foregoing is a brief history of the case of “ Shearman's adm'r & others v. Hicks & others," which is necessasy to be thus referred to, in order to a proper understanding of the points now to be decided in the case before us.
It appears from the record in the case we are now considering, that by some strange and unaccountable mistake or accident, the will of Celia Shearman, which was presented to the court of appeals, upon the printed record, was so changed, by mere accident or mistake of the printer, as to make it altogether a different will from that which the testatrix executed, and which was construed by the Circuit court of Fauquier, and passed upon by the jury in their special verdict.
The will which was admitted to probate was in these .words (leaving out the formal commencement): First— I give and bequeath to Kimble Gr. Hicks, jr., son of Kimble G-. Hicks, sr., after the decease of my husband, Thomas Shearman, the plantation he now holds a life estate in, given to him by my father, Kimble Hicks, as well as a lot of land adjoining the town of Paris, held under a lease, &c. &c., provided he or his guardian pays over annually to my niece, Celia Edmonds, in current money, the sum of one hundred and fifty dollars during her - natural life, &c. &c.
• In the will, as printed, the paragraph above set forth is broken and divided into two distinct clauses. By this division the first is made to terminate with the words *204 « he now holds;” after which comes a full stop or period; . r and the second paragraph is made to begin with the “A life estate;” and the word “in,” following these last quoted words, is improperly printed “is.” So that the will, as presented to this court, in the printed record, is converted by this mistake or accident of the printer, (in dividing the final paragraph into two, and the conversion of the word “in,” used appropriately hy the testatrix, into the word “ is,”) into a very different paper from that executed by her and admitted to probate in the County court of Fauquier.
The printed document reads as follows: “ I give and bequeath to Kimble G. Hicks, jr., son of Kimble G-. Hicks, sr., after the decease of my husband, Thomas Shearman, the plantation he now holds.—(Here is a period, and then commences another paragraph.)—A life estate is given to him by my father, &c. &e., provided he or his guardian pays over annually to my niece, Celia Edmonds, the sum of one hundred and fifty dollars during her natural life,” &c.
This latter paragraph thus disconnected by the printer, and the single word “in” converted into the word “ is,” becomes unintelligible jargon; while if read as the whole paragraph is written by the testatrix, there can be no mistake as to its meaning. By the will, as it was written by the testatrix, there was devised to Kimble G. Hicks, jr., (after the decease of Thomas Shearman,) the plantation said Shearman held a life estate in, but upon condition that the said Kimble G. Hicks, jr., or his guardian, should pay over annually to Celia Edmonds, . the niece of the testatrix, the sum of one hundred and fifty dollars. It is plain, that under the true will, as written, the real estate devised to Kimble G. Hicks, jr., was charged in his hands with the annuity of one hundred. and.fifty dollars,. As the will was changed by the *205 printer, and presented to and passed upon by this court, in the year 1857, it simply devised the real estate to Kimble G-. Hicks, jr., without any charge whatever in favor of Celia Edmonds. In other words, the-will set up and established by the decree of this court (reversing the decree of the Circuit court of Fauquier,) was not the true will of the testatrix; but by mere accident, another paper was substituted, and which made altogether a different disposition of the property from that made by the testatrix. -In the case of “ Shearman’s adm’r v. Hicks, &c.,” in which this proceeding was had, and in which a false and fictitious paper was set up as the will of the testatrix, Celia Edmonds was not a party, and was not represented by counsel. There was no question made as to the annuity to her;' and indeed could not arise upon the paper presented as the will in the printed record. Bnt two questions arose and were decided in that case. 1st: Bid the deed executed by John Timberlake to Shearman and wife, confer on the wife a valid power of appointment? And 2d: If it did, was the power well executed by the olograph will? The court below held that the power was not well executed; because, upon its construction of the deed conferring the power, the will ought to have been executed in the presence of two witnesses. This court reversed the decision of the Circuit court of Fauquier, and held that the power was well executed by an olograph will; and accordingly set up and established the paper presented in the printed record, so far as that paper disposed of the real estate conveyed in the deed from John Timberlake; but without the conditions annexed to the devise- in the true will of -the testatrix, charging the real estate, in the hands of the devisee, Kimble G. Hicks, jr., with the annuity of one hundred and fifty dollars to Celia Edmonds.
The mistake or accident i by which a different paper *206 wag substituted by the printer, was not discovered until , K some months after the adjournment of the April term 1857; and this is accounted for from the fact that the counsel who appeared in the court of appeals were not same w^° managed the case in the court below. The counsel here argued the case upon the will presented in the printed record, (and Celia Edmonds not being a party to this appeal, and with no counsel to represent her here,) there was nothing to call attention, either of counsel or the court, to the fact that the paper presented was not the true will of Celia Shearman. "When the mistake was discovered it was too late to have it corrected by this court. The court had then adjourned to the next regular term, and its decree certified down to the court below. The latter court, manifestly, had no authority, in that case, to make the correction. Iu this state of things, it seems that the appellee, Celia Edmonds, was advised to apply to the Legislature for relief, in the shape of an enabling act, to confer jurisdiction on the Circuit court of Fauquier, where the land was located and the parties resided, to correct the mistake and relieve against the accident, by which, in the proceedings had in this court, she had been deprived of the annuity seemed to her by the will of her aunt Celia Shearman. Accordingly, an act was passed by the Legislature, on the 2d of April, 1861, entitled “An act for the relief of Celia Edmonds,” (Sess. acts 1861, p. 300,) which, after sundry recitals, setting forth in substance the facts above detailed, enacted “ that the Circuit court of Fauquier county have power and jurisdiction (if it does not already possess it, which is doubtful,) notwithstanding the said final decree of the said supreme court of appeals, upon an original bill in equity, filed in said court by said Celia Edmonds, making all persons interested parties, to hear and determine her complaint *207 •touching the premises, and grant her such relief therein as it shall deem'just and equitable, and the provisions of said will may entitle her to.”
At February rules, in the year 1866, Celia Edmonds filed her bill in chancery, in the Circuit court of Fauquier, reciting the facts above referred to, and setting forth the act of Assembly above recited, and making parties defendant to said bill the heirs at law of said Kimble G-. Hicks, jr., (who had departed this life,) together with the personal representative and heirs at law of Celia Shearman, and insisting that “so much of the will of said Celia Shearman as bestows upon the said Celia Edmonds the annuity of one hundred and fifty dollars per annum, during her natural life, and charges the land devised to Kimble Gr. Hicks, jr., with the payment thereof, may be declared valid and effectual, as part of the same; and that the said land may be declared subject to, and liable for, the payment of said annuity,” &c. &c. Such proceedings were had under this bill, that at the June term of said court, in the year 1867, a decree was entered, in which the said court, “ not modifying or changing the said decree of the Supreme court of appeals, entered on the 23d of November 1857, in the case of “ Shearman’s adm’r v. Hicks & others,” further or otherwise than by relieving against the consequences of the accident or mistake referred to,” &c., “doth adjudge, order and decree, that the mistake complained of being established and made manifest to the court, that the true last will and testament of Celia Shearman, dec’d, is in the following words and figures”—and then follows a copy of the true will, as executed by the testatrix—“except so much thereof as disposed of a lot of land in the town of Paris, held under a lease by Josiah Murray; as to which, said will is void and inoperative, (the said testatrix having no power to dispose of said lot by will,) *208 and that the same, with the exception aforesaid, be and ^be same is hereby established as the true last will and of the said Celia Shearman, dec’d, and that Pr°bate thereof, with the exception aforesaid, be held good and valid in law.” And it was further decreed ° that Celia Edmonds was entitled, during her life, to the annuity of one hundred and fifty dollars per annum, from the death of Thomas Shearman, specified in the last will and testament; and that said annuity was chargeable upon the real estate devised to said Kimble G. Hicks, jr., other than the lot of land adjoining the town of Paris, which did not pass by said will. And a commissioner of the court was directed to enquire, among other things, (not necessary here to notice,) what amount of money, principal and interest, was due to said Celia Edmonds on account of said annuity.
On the return of the commissioner’s report, showing the balance due Celia Edmonds, on account of said annuity, the said Circuit court entered another decree, directing “that the defendants, Albert C. Byrne and Evelina his. wife, which said Evelina is the sole surviving heir of Kimble G. Hicks, jr., deceased, do pay to the plaintiff, Celia Edmonds, the sum of two thousand six hundred and fifty-two dollars, being the amount of principal and interest due on the 10th of May 1867 to the plaintiff, on the annuity falling due on the 10th day of May in each year since the death of the said Thomas Shearman,” &c.; and further adjudged and decreed that the real estate devised to Kimble G. Hicks, jr., and in the hands of Byrne and wife, (except the lot in the town of Paris,) is bound and chargeable with the payment of the annuity of one hundred and fifty dollars, during the life of the said Celia Edmonds.
From these two decrees an appeal was allowed to the District court at Fredericksburg; which affirmed the *209 decrees of the Circuit court; and from that decree an appeal was allowed to this court.
"We do not deem it necessary, in our view of this novel and curious case, to enter upon a discussion of the question so elaborately argued by the counsel for the appellant, as to the authority of the Legislature to pass the act of April 1861, to enable the Circuit court of Fauquier to take jurisdiction of the case, after the final decree of the Court of Appeals—whether such a law, acting retrospectively upon rights already vested under the decision of the appellate court of the last resort, is unconstitutional and void—or, whether that act, authorizing a court to re-open and re-hear a cause finally decided by the Supreme court of appeals, is an invasion of judicial power, and beyond legislative authority. These are interesting and difficult questions, which have been the subject of judicial investigation and discussion in this court, in the case of Griffin’s ex’or v. Cunningham, 20 Gratt. 31. But, in the view we take of the case before us, these questions do not necessarily arise, and need not be here disposed of. ¥e are of opinion that, independent of the act of April ’61, the Circuit court of Fauquier had jurisdiction to hear and determine the case made by the complainants’ bill—that no legislative act was necessary to confer such jurisdiction; but that under its inherent and original jurisdiction, as a court of equity, it had the power and authority to hear and determine such a case; and that no legislative sanction was necessary to confer such power.
Treating the case outside and independent of the act of Assembly, the bill must be regarded as a bill impeaching a decree based upon a fictitious or fallacious case, so made by accident or mistake, and for which the .complainant was in no way responsible, and could not prevent. In a proceeding and before a court,.to which *210 the -appellee was not a party, and- in which she was not represented by counsel, a will is established as the will of the testatrix, which was not her will, without any default or negligence on her part; but by mere accident or mistake in ■ printing the paper—an accident which misled both the court and the counsel—there was established and substituted in the place of the true will, (under which the appellee was one of the principal objects of the testatrix’s bounty,) another, and a fictitious will, which deprived her of all the benefits which her aunt, the testatrix, had been careful to secure to her.
It would be strange, indeed, if such a case, appealing as it does to every instinct of justice, could not be brought within the benign and far reaching powers of a court of equity.
One of the highest prerogatives, and one of the favorite subjects of equity jurisprudence, is to give relief against the consequences of mistake and accident.
The jurisdiction of courts of equity, arising from accident, is, says Mr. Justice Story, a very old head in equity, and probably coeval with its existence. By the term accident is included not merely inevitable casualty or the act of Providence, or what is technically called vis major or irresistible force, but such unforeseen events, misfortunes, losses, acts or omissions as are not the result of any negligence or misconduct in the party. 1 Story’s Eq., S. 78, Bedford’s edition.
Lord Oowper, speaking on the subject of accident as cognizable in equity, said: “ By accident is meant, when a case is 'distinguished from others of the like nature by unusual circumstances.” The definition would be more accurate, if he had added, provided such unusual circumstances had not arisen from the gross negligence or default of the party seeking relief.
After a thorough examination of the leading cases on *211 the subject, Mi’. Justice Story thus announces the general principle by which cases of accident are governed: “ Perhaps, upon a general survey of the grounds of equity jurisdiction in cases of accidents, it will be found that they resolve themselves into the following: That the party seeking relief has a clear right, which cannot otherwise be enforced in a suitable manner; or that he will be subjected to unjustifiable loss, without blame or misconduct on his part.” 1 Story’s Eq., § 109. See also Jeremy on Eq. Jur., Ch. 1, p. 359; Bayard v. Norris, 5 Gill, 468.
Applying these well established principles to the case before us, we are of opinion that the Circuit court of Fauquier had jurisdiction to hear and determine the case presented in the appellees bill. And we are further of opinion, that the appellee has not lost her remedy by any delay amounting to laches on her part. The novelty of the case requiring, as she was advised, the intervention of the legislative authority to give her relief; and the existence and continuance of the late civil war, and the interruption of judicial proceedings consequent thereon, sufficiently accounts for her delay in prosecuting her suit. It is enough that it was commenced within the period of the statute of limitations.
We are, therefore, of opinion that the decree of the said Circuit court of Fauquier be affirmed.
Decree aeeirmed.